## Gable *v.* Sisters of St. Francis, Appellant.

*Negligence—Public charity—Hospital—Exemption from suit for damages for tort of servant.*

1. A purely public charity cannot be made liable for the tort of its servants.

2. A corporation which has erected a hospital out of charitable bequests, and maintains it from charitable donations, and admits every person to its care, irrespective of religious faith or ability to pay, is a purely public charity, and not liable for personal injuries caused by the negligence of a nurse in the hospital, and it is immaterial that the person injured was a pay patient, and that one-third of the hospital's space was used for the care of pay patients; and it is also immaterial that the person injured in a suit against the hospital has filed a paper disclaiming any right of execution against any fund held for charitable uses and all income other than that received from pay patients.

Argued Jan. 6, 1910. Appeals, Nos. 290 and 291, Jan. T., 1909, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1905, No. 2,784, on verdict for plaintiffs in case of John F. Gable and Mollie Gable v. Sisters of St. Francis of Philadelphia. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before BRÉGY, P. J.

The opinion of the Supreme Court states the case.

At the trial the jury returned a verdict for $6,000 for plaintiff, Mollie Gable, and $350 for her father, John F. Gable.

Judgment was entered for Mollie Gable for $3,650, all above that sum having been remitted, and judgment was entered for John F. Gable for $350. Defendant appealed.

*Error assigned* among others was (25) in refusing binding instructions for plaintiffs.

*Theodore F. Jenkins*, with him *J. Peter Klinges*, for appellant.—The fact that some of the patients paid does not make the hospital any the less a charity. The judgments of this

court and of the appellate courts of the other states establish that the defendant is conducting a charity and therefore is not liable for the negligence of its officers, agents or servants necessarily employed in the carrying on of the charity, though some of the patients contribute towards its support: Daly's Est., 208 Pa. 58; Fire Ins. Patrol v. Boyd, 120 Pa. 624; Richards v. Willard, 176 Pa. 181; Donohugh v. Library Co., 86 Pa. 306; Phila. v. Penna. Hospital, 154 Pa. 9; House of Refuge v. Smith, 140 Pa. 387; Penna. Hospital v. Del. County, 169 Pa. 305; Episcopal Academy v. Phila., 150 Pa. 565; Phila. v. Women's Christian Assn., 125 Pa. 572; Northampton County v. Lafayette College, 128 Pa. 132; Ford v. School Dist., 121 Pa. 543; Downes v. Harper Hospital, 101 Mich. 555 (60 N. W. Repr. 42); Hearns v. Waterbury Hospital, 66 Conn. 98 (33 Atl. Repr. 595); McDonald v. Mass. Hospital, 120 Mass. 432; Van Tassell v. Manhattan Eye & Ear Hospital, 15 N. Y. Supp. 620; City of Richmond v. Long, 17 Gratton (Va.), 375; Murtaugh v. City of St. Louis, 44 Miss. 479; Sherbourne v. Yuba County, 21 Cal. 113; Farrigan v. Pevear, 193 Mass. 147 (78 N. E. Repr. 742); Brown v. Vinalhaven, 65 Maine, 402; Gooch v. Indigent Females Assn., 109 Mass. 558; Perry v. House of Refuge, 63 Md. 20; Harris v. Women's Hospital, 27 Abbott's New Cases, 37; Pepke v. Grace Hospital, 130 Mich. 493 (90 N. W. Repr. 278); Parks v. Northwestern University, 218 Ill. 381 (75 N. E. Repr. 991); Ward v. St. Vincent's Hospital, 50 N. Y. Supp. 466; Powers v. Homeopathic Hospital, 47 C. C. A. 122; Joel v. Women's Hospital, 35 N. Y. Supp. 37; Noble v. Hahnemann Hospital, 98 N. Y. Supp. 605; Collins v. Medical School, 59 N. Y. App. Div. 63; Williamson v. Industrial School of Reform, 95 Ky. 251 (24 S. W. Repr. 1065); Glavin v. Hospital, 12 R. I. 411.

*C. F. Eggleston,* with him *W. W. Weigley,* for appellees.— If; for the sake of argument, it is admitted that the defendant is a charitable institution, nevertheless it is liable because of its contractual relation with the plaintiff: Powers v. Mass. Hospital, 109 Fed. Repr. 294; Union Pacific Ry. Co. v. Artist, 60 Fed. Repr. 365; Ward v. St. Vincent's Hospital, 39 N. Y. App.

Div. 624; Hewett v. Women's Hospital Assn., 73 N. H. 556 (64 Atl. Repr. 190); Glavin v. Hospital, 12 R. I. 411.

Moreover, the defendant has engaged in carrying on a business as a source of profit and in so doing it becomes liable for the acts of its servants, just as a municipality in entering a business for profit incurs the same responsibility as any other corporation doing similar work: Giovanni v. Phila., 59 Fed. Repr. 303; City v. Gilmartin, 71 Pa. 140; Bodge v. Phila., 167 Pa. 492; Oliver v. Worcester, 102 Mass. 489.

Hence it is maintained that where a charitable institution conducts and operates a business or plant for revenue it renders itself liable for negligence to the same extent as any private individual: Winnemore v. Phila., 18 Pa. Superior Ct. 625.

A charity is to cure, not to kill; to help, not to injure; and a doctrine by which the defendant would be relieved from liability in this case would reverse the very meaning of charity: Stewart v. Harvard College, 94 Mass. 58; Davis v. Congregational Society, 129 Mass. 367.

OPINION BY MR. JUSTICE STEWART, February 21, 1910:

The plaintiff, Mollie Gable, a young woman nearing her majority, with a view to having a surgical operation performed on her person by a surgeon of her own selection, was admitted as a pay patient into the hospital of the defendant corporation. While undergoing the operation one of the hospital nurses prepared the bed in the patient's room for occupancy upon her return from the operating room, and in order to warm it so that the patient's normal temperature of body might be maintained she placed in the bed bottles or jars containing hot water. Upon the patient's return to this room after the operation had been performed, another nurse, who had assisted in the patient's return, removed the bottles from the bed so as to properly place the patient therein, and then restored them, placing two at either side of the body of the patient, who was wholly unconscious from the effect of the ether administered. While the plaintiff was thus unconscious and helpless in the bed, the hot water escaped from one of the

bottles with the result that she was seriously scalded. To recover for her injuries thus sustained she brought the present action against the defendant, charging it with the negligence that had occasioned her hurt. She was permitted to recover in the court below, as was also her father, in his right, and these appeals follow. A fuller statement of the facts touching the immediate occurrence of the accident than we have given above would be to no purpose, since our determination of the case will be found to rest upon circumstances entirely apart. We thus eliminate from the discussion all the questions suggested by the assignments of error, save the one we are about to consider.

The defendant is a corporation having for its essential objects, as set out in its charter, "The establishment of schools for the education of youth, and the erection of hospitals for the care of the sick." It does not appear that it conducts any other hospital than that in which the plaintiff was a patient. This hospital is located in the city of Philadelphia. It was founded and erected out of funds bequeathed the corporation to that end, and it is maintained by charitable donations, appropriations made by the state, and pay received from such patients as demand and are accommodated with rooms separate from the general ward. Between 2,000 and 3,000 patients are yearly received in the hospital; and of these more than half are strictly charity patients who pay nothing to the hospital, while some who are reckoned in the paying class pay but a nominal sum. The annual report of the hospital for the year ending December 31, 1907, shows that the total amount received from pay patients during the year was $28,922, as against $43,478 received in various amounts as charitable donations, the aggregate of these two sums being required for the hospital maintenance. Two-thirds of the hospital space is used for the care of charity patients, and a dispensary is maintained, which is administered without charge and serves annually thousands of patients. Admission to the hospital is denied no one on grounds of religious faith or because of inability to pay. The corporation is under the management or control of a board of managers. It has no corpo-

rate stock; it can declare no dividends, and its entire income is employed to maintain and enlarge, as it is able, its capacity for gratuitous, beneficent service to the public. The fact that it receives pay for a certain class of patients detracts nothing from its character as a purely charitable institution: Daly's Est., 208 Pa. 58; Phila. v. Penna. Hospital, 154 Pa. 9. We quote from the opinion in the case last cited: "While it was conceded that the buildings and grounds are exempt from taxation for the reason that defendant is a purely public charity, yet it was contended that within the portion of the grounds charged with this claim there is a large building reserved exclusively for the use of patients paying a higher rate than any others; that these payments much exceed the cost of maintenance assignable to themselves, if the original cost of the property and any estimated rental is excluded. It appears to be. conceded that the object of the trustees in maintaining this department of the institution is to make a profit, by the use of which to extend the institution's capacity for good among the destitute members of the community. It was not contended, nor is there anything to show, that there was any actual profit realized in this department after taking into consideration the value of the ground and improvements, and the cost of maintenance. The apparent profit is applied to the general objects of charity, and no portion of it enures to the benefit of any person concerned in administering the charity. The Pennsylvania Hospital is a purely public charity in the highest and best sense of the term, and under all our authorities we think it is exempt from the species of taxation attempted to be imposed in this case." It is a doctrine too well established to be shaken, and as unequivocally declared in our own state as in any other, that a public charity cannot be made liable for the tort of its servants. The doctrine rests fundamentally on the fact that such liability, if allowed, would lead inevitably to a diversion of the trust funds from the trust's purposes. In Boyd v. Insurance Patrol, 113 Pa. 269, the question was avoided because not properly raised on the facts; but when that case came a second time before this court in 120 Pa. 624, the question received an emphatic and

unequivocal answer, and the rule as stated there is the settled law of Pennsylvania. The action was against the Fire Insurance Patrol, a corporation whose object was to protect and save life and property contiguous to burning buildings and was maintained by voluntary subscription, and was brought by one injured through the alleged negligence of an employee of the patrol. The contention on behalf of appellant was that the patrol was a public charity, and because of this fact it was exempt from the operation of the rule respondeat superior. That it was a public charity was judicially declared, and the case was accordingly reversed. PAXSON, J., in the opinion filed uses this very expressive language: "The Insurance Patrol is a public charity; it has no property or funds which have not been contributed for the purposes of charity, and it would be against all law and all equity to take those trust funds, so contributed for a special, charitable purpose, to compensate injuries inflicted or occasioned by the negligence of the agents or servants of the patrol. It would be carrying the doctrine of respondeat superior to an unreasonable and dangerous length. That doctrine is at best—as I once before observed—a hard rule. I trust and believe it will never be extended to the sweeping away of public charities; to the misapplication of funds, specially contributed for a public charitable purpose, to objects not contemplated by the donors. I think it may be safely assumed that private trustees, having the control of money contributed for a specific charity, could not in case of a tort committed by one of their members, apply the funds in their hands to the payment of a judgment recovered therefor. A public charity, whether incorporated or not, is but a trustee, and is bound to apply its funds in furtherance of the charity and not otherwise." In support of the view thus so vigorously expressed numerous English and American authorities are cited showing its general acceptance. For the purposes of this case these citations need not be here repeated, nor is it necessary to refer to other authorities which might readily be added; but the case of Downes v. Harper Hospital, 101 Mich. 555, so clearly resembles the present one in its facts, and the reason for the rule is so clearly brought out that a brief

extract therefrom will not be amiss. "A corporation organized and maintained for no private gain, but for the proper care and medical treatment of the sick, and to that end to manage a trust fund donated for that purpose, cannot be made liable for injuries sustained by a patient by reason of the negligent acts of its managers or employees. The fact that patients who are able to pay are required to do so does not deprive the corporation of its eleemosynary character, nor permit a recovery for damages on account of the existence of contract relations. If the contention of the learned counsel for the plaintiff be true, it follows that the charity or trust fund must be used to compensate injured parties for the negligence of the trustees, or architects and builders, upon whose judgment reliance is placed as to plans and strength of materials; of physicians employed to treat patients; and of nurses and attendants. In this way the trust fund might be entirely destroyed, and diverted from the purpose for which the donor gave it. Charitable bequests cannot be thus thwarted by negligence for which the donor is in no manner responsible. If, in the proper execution of the trust, a trustee or an employee commits an act of negligence, he may be held responsible for his negligent act; but the law jealously guards the charitable trust fund, and does not permit it to be frittered away by the negligent acts of those employed in its execution. The trustees of this fund could not by their own direct act divert it from the purpose for which it was given, or for which the act of the legislature authorized the title to be vested in the defendant. It certainly follows that the fund cannot be indirectly diverted by the tortious or negligent acts of the managers of the fund, or their employees, though such acts result in damage to an innocent beneficiary. Those voluntarily accepting the benefit of the charity accept it upon this condition." The argument is advanced that because the defendant corporation receives into its hospital patients who are required to pay for the accommodations and services furnished, it is not exclusively a public charity, and that therefore the rule we have referred to does not apply. The argument is fully answered in the case last cited, as well as in our own case.

of Phila. v. Penna. Hospital, 154 Pa. 9.  It is wholly immaterial that the plaintiff who here complains of injury was admitted as a pay patient.  It is insisted, however, that the reason for the rule does not obtain in this particular case, since the appellees have filed a paper in the court below disclaiming any right of execution against any fund of the defendant corporation held for charitable uses and all income of said corporation other than that received from pay patients; and have asked that the verdict be paid out of funds derived from pay patients only.  The argument overlooks the fact that every dollar received by the defendant corporation, from whatever source, is stamped with the impress of charity.  For what did these plaintiffs pay?  For accommodations which the hospital was enabled to provide through the use of money charitably donated to it.  The room, the bed, the furnishings and conveniences for which the plaintiff paid are all of them the direct and immediate product of the voluntary donations it received.  It follows that the money that the hospital receives from its pay patients is as strictly the increment of the charitable donations it has received as would be the interest on the money given it if invested on loan.  If any profit results from this source, it can only be regarded as incidental addition to the trust fund or income.  For the reasons stated we sustain the twenty-fifth assignment of error, which complains of the refusal of the court to give binding instructions for the defendant.

The judgments in these cases are reversed, and judgment is now ordered to be entered in each case for the defendant.