PATERLINI et ux. v. MEMORIAL HOSPITAL ASS'N OF MONONGAHELA CITY, PA., et al.

(Circuit Court of Appeals, Third Circuit. January 21, 1918.)

No. 2293.

1. COURTS ☞367—FEDERAL COURTS—RULES OF DECISION.

Where, on the ground of diversity of citizenship, an action is begun in the federal court against a hospital, chartered under the state laws as a charitable corporation, to recover on account of the death of a patient, the federal court should, on ground of comity, if for no other reason, follow the state rules as to liability of such hospitals, although federal courts, where their jurisdiction depends on diversity of citizenship, should follow those state rules of decision which have become rules of property.

2. CHARITIES ☞45(2)—PUBLIC CHARITIES—LIABILITIES.

A Pennsylvania hospital association, which was a charitable corporation, is not, where there was no negligence on the part of its executive officers, liable for the death of a patient resulting from negligent and unauthorized act of a nurse who, contrary to the rules, went into the operating room to procure a cathartic, but instead procured a poison, which she administered to the patient with fatal results; the inapplicability of the doctrine of respondeat superior to charitable corporations having crystallized in Pennsylvania into a rule of property.

3. COURTS ☞307(1)—FEDERAL COURTS—DIVERSITY OF CITIZENSHIP.

The jurisdiction given to federal courts on account of diversity of citizenship of the parties is intended merely to secure to a nonresident, as against citizens of the state, an impartial trial, and does not create in favor of such nonresident any rights of action which citizens of the state under like situation would not have.

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Action by John Paterlini and Mary Paterlini, citizens and subjects of the kingdom of Italy, against the Memorial Hospital Association of Monogahela City, Pa., a corporation, and Joseph A. Herron and others, citizens of Pennsylvania. There was a judgment for defendants (241 Fed. 429), and plaintiffs bring error. Affirmed.

Arthur O. Fording, of Pittsburgh, Pa., for plaintiffs in error.

Charles G. McIlvain and McIlvain, Murphy, Day & Witherspoon, all of Pittsburgh, Pa., Carl E. Gibson, of Monongahela, Pa., and Andrew M. Linn, of Washington, Pa., for defendants in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. This suit was brought against an incorporated hospital and against its directors individually, by the parents of a boy who died while a patient in such hospital, to recover

damages for negligence alleged to have caused his death. The jurisdiction of the court is based on diversity of citizenship, the plaintiffs being citizens of Italy, and the defendants citizens of Pennsylvania. The court below sustained a demurrer and dismissed the suit. On writ of error this court (see 232 Fed. 359, 146 C. C. A. 407) reversed the case; the court saying:

"In view of the allegations of the pleadings and of the fact that the questions involved in this case so closely concern the administration of charitable foundations in Pennsylvania, we are unwilling to pass upon the liability of such institutions and their trustees for negligence, until by the proofs, rather than from the uncertain averments of pleadings, we are precisely informed of the facts upon which our judgment should rest. Without, therefore, expressing in any way any view upon these questions, we deem it the exercise of wise discretion to overrule the demurrer and allow the proofs to be placed on record before the case is reviewed by this court. Accordingly we will reverse the judgment below, and remand the cause, with directions to overrule the demurrer, without prejudice to later raising the questions raised by it, and that the cause proceed in due course."

Subsequently the case was tried, proofs on both sides taken, and the court directed a verdict for the defendants. Thereupon the plaintiffs sued out this writ. Consequently we now have the full proofs, and are thereby enabled to dispose of the important questions here involved to much better advantage than when the case was here before. As presented by pleadings and proofs, the right of the plaintiffs to recover takes three aspects: First, the personal liability of the directors arising from any negligence on their part; second, the liability of the corporate defendant, the Hospital, arising from the negligence of its officers; and, third, the liability of the Hospital for the negligence of a nurse.

Without reciting all the proofs, we may say they tend to show the defendant hospital was chartered by the state of Pennsylvania, and was located in a bituminous coal district, where mining accidents were of frequent occurrence and required prompt attention. In the operating room there were constantly kept two one-gallon bottles—one containing bichloride, the other mag. salts—which were necessary and much-used antiseptics in surgical work. Each of these bottles was plainly labeled; the bichloride being also marked "Bichloride, Poison." The surgical room was entirely separate from the ward section, was at some distance, and nurses in the ward section were forbidden to enter it.

Such being the situation, the proofs show that about 6:30 on the morning of the accident a ward student nurse had occasion to administer a cathartic of epsom salts to the plaintiffs' son, a patient in her ward. Going to the cupboard where the cathartics were kept, she got castor oil, but, finding no salts in the customary place, she, in violation of the rules, went across two corridors to the dressing room, which connected with the surgical room. Her description of what followed, after there finding the bottles of antiseptics referred to above, was:

"Q. Those bottles you say were large gallon bottles? A. I think they were gallon bottles. Q. Were they labeled so that you could read them? A. Yes, sir. * * * Q. In making your observations in this room that morning, did you read on this bottle the label, 'Bichloride'? A. Yes, sir; I read the bottles. Q. You saw on another bottle 'Solution of Salts'—epsom salts? A.

Yes. Q. You say, when you found a bottle of epsom salts in the operating room, you put your tray on a table; and what was the position of the table which you placed your tray on with reference to the location of the bottles? A. It was about like that (indicating) to the left, and I just turned that way. Q. You turned about half way around? A. Yes, sir. Q. And in reaching down in that manner, half turned, your hand fell upon the bottle containing bichloride, instead of the solution of epsom salts? A. That is the only way I can remember making the mistake. I had read it first, and then it seems, when I went to get my glass, I reached at the same time for the bottle, and picked up the wrong bottle. * * * Q. Was there anything about that bottle beside the label—I am referring now to the bottle of bichloride—was there anything about that bottle, beside the label, to indicate that it contained poison? A. They were labeled poison. Q. It was labeled poison? A. That is as well as I can remember what it was labeled."

Bearing on what this student nurse should have done when she found there were no salts in the ward cupboard, the uncontradicted proof was:

"Q. What was the duty of the nurses when they discovered that 'mag.' salts was not in the cupboard where they went to obtain it? A. She should have referred to the graduate nurse. Q. Have you ever before, in your experience, had a nurse go into another department of a hospital to hunt medicine? Was there any such authority on the part of a nurse to do so? A. No; she should not go to another department without permission. Q. Is it not against the well-known rules and regulations of your hospital for her to have done so? A. Yes, sir."

The proofs further showed the executive work of the hospital was in charge of experienced and capable people, and there is an entire absence of any proof showing an act of commission or omission on the part of the directors, or on the part of any executive officer of the hospital.

In the absence of such proof, it is clear that the court was justified, and indeed it was its duty, to charge the jury that there was no proof that justified a verdict against the directors personally or against the hospital for negligence on the part of its executive officers. It follows, therefore, that the only ground on which the hospital could be held was for the negligence of the student nurse, and under the proofs that phase of the case resolves itself into the question whether the hospital is responsible for the negligent act of a nurse done without the knowledge of the hospital, outside the scope of her duty, and in violation of the rules of the hospital.

This hospital was chartered by the state of Pennsylvania under that section of its general incorporation act of April 29, 1874 (P. L. 73), which provides for corporations not for profit and for "the support of any benevolent, charitable * * * undertaking."

[1-3] The corporation being created by the state of Pennsylvania, being supported by charitable contributions of its citizens and by appropriations by that state, and the charitable uses and trusts which such a corporation administers being subjects over which the courts of that state are given statutory jurisdiction, the case would seem especially one where a federal court would from comity, if for no other reason, incline to follow the settled law of Pennsylvania if such law is found to exist. In the able opinion of Judge Gray, in Snare & Triest Co. v. Friedman, reported at 169 Fed. 1, 94 C. C. A. 369, 40 L. R. A.

(N. S.) 367, this court, while noting its wide range of independent judgment, recognizes that in cases based on diversity of citizenship, a federal court exercises a jurisdiction concurrent with the local state courts, and lays down this salutary policy and principle:

"It is to be remembered, however, that this diversity of opinion will not be indulged in by the courts of the United States, where, as we have just said, in the ordinary administration of the law by the state courts, and by the settled course of their decisions, certain rules are established which have become rules of property and conduct in the state, and have all the effect of law, which it would be wrong to disturb."

Taking this as its chart, the duty of the court below was clear. This hospital was of the general type described by the Supreme Court of Pennsylvania in Gable v. Sisters of St. Francis, 227 Pa. 256, 75 Atl. 1088, 136 Am. St. Rep. 879, as—

"maintained by donations, appropriations made by the state, and pay received from such patients as demand and are accommodated with rooms separate from the general wards. * * * Admission to the hospital is denied [to] no one on grounds of religious faith or because of inability to pay. * * * It has no corporate stock; it can declare no dividends, and its entire income is employed to maintain and enlarge, as it is able, its capacity for gratuitous, beneficent service to the public."

That such organizations are trustees for the public benefit is a recognized principle in that state. In Humane Fire Co.'s Appeal, 88 Pa. 391, the Supreme Court referring to a fire engine company, says:

"This is not a trading corporation designed to make money for its shareholders, whose money has purchased its property and in which property every such shareholder has a right, proportionate to the amount of his contribution, but it is a charity, incorporated as a public benefaction, and it consequently holds its property, which has been contributed by the public, in trust for that public. There are no shareholders in companies of this kind, and if any contributions have been made to this company by the members thereof, they were made as gifts and donations for the public good, and these members themselves are but trustees and agents to carry into effect this charitable organization. That a voluntary association of individuals, who have contributed funds for a purely public purpose, will be regarded as a charity was ruled in Thomas v. Ellmaker, 1 Pars. Eq. Cas. [Pa.] 98; and that such association has been incorporated alters neither its design nor nature, but only gives it a legal status which it would not otherwise possess. * * * It is but a trustee for the public and to give its assets to its members would be a perversion of such trust."

In Fire Insurance Patrol v. Boyd, 120 Pa. 646, 15 Atl. 556, 1 L. R. A. 417, 6 Am. St. Rep. 745, where the object of the corporation was "to protect and save life and property in or contiguous to burning buildings, and to remove and take charge of such property, or any part thereof, when necessary," the court held that:

"The Fire Insurance Patrol of Philadelphia is a public charitable institution;" that is, "in the performance of its duties it is acting in aid and in case of the municipal government in the preservation of life and property at fires."

In Ford v. School District, 121 Pa. 549, 15 Atl. 812, 1 L. R. A. 607, it was held that in Pennsylvania a school district is but an agent of the commonwealth, and as such a quasi corporation for the sole purpose of administering the commonwealth's system of public education; it is therefore not liable for the negligence of school directors or of their employés.

This latter question of the liability of such corporations for the negligence of its employés, after being simply referred to in Boyd v. Insurance Patrol, 113 Pa. 269, 6 Atl. 536, finally came before the Supreme Court of Pennsylvania in 1888, in Fire Insurance Patrol v. Boyd, 120 Pa. 646, 15 Atl. 558, 1 L. R. A. 417, 6 Am. St. Rep. 745, and it was there held the rule of respondeat superior did not apply to a public charity like the Insurance Patrol, and it was not liable for the negligence of an employé. In that case the court said:

"No state in this country, or in the world, has upheld the sacredness of trusts with a firmer hand than the state of Pennsylvania. Not only is a trustee for a public or private use not permitted to misapply the trust funds committed to his care, but if he convert them to his own use the law punishes him as a thief. How much better than a thief would be the law itself, were it to apply the trust's funds contributed for a charitable object, to pay for injuries resulting from the torts or negligence of the trustee? * * * If the principle contended for here were to receive any countenance at the hands of this court, it would be the most damaging blow at the integrity of trusts which has been delivered in Pennsylvania; we are not prepared to take this step."

This decision, made in 1888, remained the unquestioned law of the state until 1910, when it was again sought to be raised in Gable v. Sisters of St. Francis, 227 Pa. 254, 75 Atl. 1087, 136 Am. St. Rep. 879; a case against a hospital and in all pertinent facts like the present. But the Supreme Court adhered to its former decision, saying:

"It is a doctrine too well established to be shaken, and as unequivocally declared in our own state as in any other, that a public charity cannot be made liable for the torts of its servants. * * * In 120 Pa. 624 [15 Atl. 533, 1 L. R. A. 417, 6 Am. St. Rep. 745], the question received an emphatic and unequivocal answer, and the rule as stated there is the settled law of Pennsylvania."

During the 30 years that have elapsed since the earlier decision, many public charities have been founded, enlarged, or endowed by gifts, bequests, or state appropriations. The founders and donors have had the solemn sanction of the state's most authoritative court that on such public charities should not be imposed legal liability for the negligence of those employed to administer them. Freedom from such liability wronged no one, because no one was bound to accept of their helpful service, and it was no injustice to couple with the voluntary enjoyment of such service, judicially decreed freedom of the charity from liability for negligence. Such being the settled law of Pennsylvania, a plaintiff in a case like this would have no ground on which to support a case in a state court of Pennsylvania. Why should the fact that he is a nonresident of that state, and therefore with less claim on its public charities than its own citizens, enable him, by going into a federal court, to obtain a judgment which would be denied to a citizen of Pennsylvania. The jurisdiction of the federal court given to nonresidents against citizens of the local state, is to insure an impartial trial, not to create rights of action which citizens of the state, in like condition, do not have.

Notwithstanding such is the case, it is contended that we should not follow the Pennsylvania cases, because, as is alleged, they are not based on sound principles. We have examined the whole range of

learned and lengthy opinions cited on this general subject, but we refrain from entering the tempting field of joining in such discussion. Whatever may be the grounds for their conclusions, the Pennsylvania decisions and those in accord therewith, have adjudged two things, namely, that hospitals and the like are public charities; and, secondly, that the law does not impose liability on such charities for negligence of an agent in administering such charity to beneficiaries. Some decisions are based on restricting trust funds to fulfill trust purposes; some on the public character of the trust, and some treat the exemption as an exception from a general liability. We see nothing to be gained by an abstract discussion of these theories. The simple fact is that if liability by a hospital, to a patient, for the negligence of a nurse exists, it is one imposed by law and is not created by contract. The imposition of that liability, in other words, invoking the legal principle of respondeat superior, was, when the question originally arose in Pennsylvania, largely a question of judicial discretion, and the due exercise of that discretion involved, on the one hand, the broad field of invoking, encouraging, safeguarding, and perpetuating charitable gifts and trusts, and, on the other, a due regard for the welfare and protection of those who availed themselves of the ministrations of these charities. With this in view, the Pennsylvania courts charged with the responsibility of imposing or not imposing liability, and having the wide field of encouraging, as well as of beneficially administering, charitable trusts, held they would not impose liability on the part of the trust to a beneficiary for the negligent act of an employé or agent in administering its benefits. Whatever the reasoning process by which it is reached, the conclusion commends itself to us.

The many accidents resulting from the industrial pre-eminence of Pennsylvania, have called into being hospitals in every section of the state. Those hospitals have in turn inspired large private and state benefactions, and have called to their directorship the most efficient, careful, and thoughtful men and women. The outcome has been that for one patient injured by a nurse's negligence, thousands have had a degree of solicitous care far in excess of a legal standard of mere duty. The unselfish aims of charities, the high grade of thoughtfully careful people whom the very nature of such charities enlist in their service, the voluntary act of recipients in seeking their aid, the comparatively few cases in which nurses have proved negligent, all unite to vindicate the far-seeing wisdom of the earlier decisions of Pennsylvania which refuse to impose liability on a hospital for the negligence of a nurse, and we see no reason why this court should depart from, and every reason why it should abide by, this ruling of the Pennsylvania courts.

The judgment below is affirmed.