Ephraim TOMLINSON, II, Administrator
of the Estate of Glenn R. Wenrich,
Deceased,

v.

TRUSTEES OF the UNIVERSITY OF
PENNSYLVANIA
and
Franklin X-Ray Corporation
and
Eugene P. Pendergrass, M. D.,
and
John F. McCarthy, Inc., Third-Party
Defendant,
and
Picker X-Ray Corporation, Third-Party
Defendant.

Civ. A. No. 22221.

United States District Court
E. D. Pennsylvania.

July 25, 1958.

---

John Stewart, Jr., James W. Tracey, III, Philadelphia, Pa., for plaintiff.

Michael A. Foley, Philadelphia, Pa., for defendant University of Pennsylvania.

VAN DUSEN, District Judge.

The plaintiff, administrator of the estate of Glenn R. Wenrich, deceased, brought this suit against several defendants, alleging negligence resulting in the death of Glenn R. Wenrich. One of these defendants, the Trustees of the University of Pennsylvania, a duly incorporated non-profit corporation, organized under the laws of the State of Pennsylvania (hereinafter called "University"), moved for a judgment on the pleadings (Document No. 8 in Clerk's file) and plaintiff moved by petition to strike the University's motion (Document No. 33 in Clerk's file). Plaintiff does not deny that University is a charitable and eleemosynary institution operating a hospital under its corporate powers.[1]

The plaintiff's decedent, an electrician and employee of John F. McCarthy, Inc., was killed while installing an intercommunication system in the radiology department of University's hospital, located in Philadelphia, Pa. Paragraph 6 of the complaint alleges that plaintiff's decedent "was in the crawl space, or above the false ceiling, in the radiology department, when he suffered a severe electric shock from the high voltage lines contained, concealed, and not marked, in the aforesaid 'crawl space.'" Paragraph 11 of the complaint alleges: "As a result of the aforesaid severe electric shock, deceased suffered multiple burns which caused him great pain and suffering and resulted in his death on March 16, 1956."

The parties agree that the law of Pennsylvania is applicable. In Pennsylvania, an eleemosynary institution is immune from tort liability. Knecht v. St. Mary's Hospital, 1958, 392 Pa. 75, 140 A.2d 30; Bond v. Pittsburgh, 1951, 368 Pa. 404, 84 A.2d 328; Siidekum v. Animal Rescue League, 1946, 353 Pa. 408, 45 A.2d 59; Gable v. Sisters of St. Francis, 1910, 227 Pa. 254, 75 A. 1087.

In the recent case of Knecht v. St. Mary's Hospital, supra, the Pennsylvania Supreme Court refused to change the existing rule concerning immunity of charitable institutions and specifically stated that it was not the province of the judicial branch of the government to abrogate that rule. It is significant that neither this decision nor any other Pennsylvania appellate decision makes a distinction between corporate and other negligence. Considering the rationale of the rule, the argument that a corporation's negligence, as opposed to the negligence of its servants, should not fall within the rule cannot be sustained.[2]

In all the Pennsylvania cases dealing with charitable immunity, the only one found which raises the question of corporate negligence, as opposed to negligence of a servant, held there was no distinction. Ginty v. Y. W. C. A., 1930, 32 Lack Jur. 29. The recent statement in Knecht v. St. Mary's Hospital, supra

---

1. See paragraph 2 of plaintiff's petition to strike (Document No. 33 in Clerk's file). A pamphlet containing the Proprietary Charters and Acts of Assembly relating to University has been placed in the Clerk's file.

2. The following language used in Paterlini v. Memorial Hospital Ass'n, 3 Cir., 1916, 232 F. 359, 360, indicates that the court was unwilling to make new law for Pennsylvania and wanted more information about the occurrence which caused the harm before deciding the case:

"The allegation is that the joint negligence of said corporate defendant and said individual defendants caused the injury complained of. The action is not based on any alleged negligence of the nurse who administered the draft to said patient. In view of the allegations of the pleadings and of the fact that the questions involved in this case so closely concern the administration of charitable foundations in Pennsylvania, we are unwilling to pass upon the liability of such institutions and their trustees for negligence, until by the proofs, rather than from the uncertain averments of pleadings, we are precisely informed of the facts upon which our judgment should rest."

[392 Pa. 75, 140 A.2d 31], that "the immunity of an eleemosynary institution from tort liability has long been the established rule in Pennsylvania" and the reasons for that rule [3] prevent this court from accepting, under the facts of this case, plaintiff's contention that there is a distinction between corporate negligence and negligence of a servant of a charitable corporation.

■ Paragraph 10 of the complaint alleges that "the defendants, jointly and severally, maintained and operated said radiology department and the crawl space above, in such a way as to be an ultra-hazardous activity, or a nuisance, to the damage of plaintiff's decedent." In the absence of any Pennsylvania authority stating that the maintenance of an electric wire leading to X-ray equipment is an ultra-hazardous activity, the case of Knecht v. St. Mary's Hospital, supra, and the Pennsylvania cases holding that an electric company must exercise the highest degree of care, but is not subject to absolute liability,[4] preclude any basis for imposition of liability on the above-quoted language of the complaint.

Viewed most favorably to the plaintiff, paragraphs 4, 7 and 9 of the complaint allege that University was the lessor of the above-mentioned hospital and radiology department, that Dr. Pendergrass, a physician specializing in radiology, was the lessee of, and in complete charge of, this radiology department, and that Dr. Pendergrass had offices located in this hospital. There is no allegation that University makes a profit from this lease,[5] or that Dr. Pendergrass uses these offices for purposes other than managing this radiology department. On this record, any rent paid by Dr. Pendergrass may not exceed the expenses of operating this department paid by University in doing its charitable work.

■ The case of Knecht v. St. Mary's Hospital, supra, holds that a charity such as University is not liable for its torts. Siidekum v. Animal Rescue League, 1946, 353 Pa. 408, 417, 45 A.2d 59, cited with approval in the Knecht case, supra, has made clear that this rule is applicable even though the charity receives compensation for rendering the services for which it is chartered. See, also, Gable v. Sisters of St. Francis, supra. The plaintiff must allege in his brief facts sufficient to support his right to recover and the cases relied on by plaintiff [6] only apply where a charitable institution en-

---

3. The rationale of the immunity rule is the "trust fund theory," i. e., that the charitable institution must apply its funds in furtherance of its charitable purpose. See Fire Insurance Patrol v. Boyd, 1888, 120 Pa. 624, 15 A. 553, 1 L.R.A. 417. Chief Judge Kirkpatrick's opinion in Menardi v. Thea. Jones Evangelistic Ass'n, D.C.E.D.Pa., 154 F.Supp. 622, 623, reads in part:
   "It seems to me that no one can read the opinion of Mr. Justice Stern, speaking for the Supreme Court of Pennsylvania in Bond v. Pittsburgh, 368 Pa. 404, 84 A.2d 328, without being convinced that the public policy of Pennsylvania which is the foundation of the rule is a strong one, founded upon the social philosophy of the state, as well as practical considerations."
   See, also, order of Chief Judge Kirkpatrick dated 7/9/58, dismissing a tort suit against this same defendant in Williams v. Trustees of the University of Pennsylvania, C. A. 21076.

4. See Reed v. Duquesne Light Co., 1946, 354 Pa. 325, 329–332, 47 A.2d 136; Jowett v. Pa. Power Company, 1955, 383 Pa. 330, 335–337, 118 A.2d 452.

5. The following statement at p. 10 of plaintiff's brief filed 2/12/58 is not supported by the record:
   "This leasing arrangement is highly profitable to the University and the University is in direct competition with other professional building owners who lease space to doctors and as such has an unfair competitive position."
   There is no allegation in the complaint that Dr. Pendergrass has an office for private, non-charity patients at the hospital.

6. The Pennsylvania appellate court cases appearing at page 10 of plaintiff's brief filed 2/12/58 only hold that a charity is liable for its torts when it invades the commercial field and engages in a business not directly related to the charity's purposes. Cf. Gable v. Sisters of St. Francis, 1910, 227 Pa. 254, 75 A. 1087.

gages in a business normally operated for profit. The conduct of a radiology department of an eleemosynary hospital is not a business normally operated for profit and, even if it were such a business, it is "directly related to the purpose for which the charity was organized." See Siidekum case, supra, 353 Pa. at page 417, 45 A.2d at page 63. If plaintiff has evidence of the conduct by University of a business normally operated for profit, he should have placed such an allegation on the record.[7]

The fact that a charitable organization carries liability insurance does not affect its immunity from suit. Siidekum v. Animal Rescue League, supra; Kesman v. Fallowfield School District, 1942, 345 Pa. 457, 29 A.2d 17. In this case, the charitable corporation had an insurance contract which stated, in part, that the insurance company would not avail itself of the charitable immunity defense without written consent.

The assistant treasurer of the defendant corporation gave such consent to the attorney for the company on March 26, 1957. He executed the answer to the complaint (which raised such defense) on September 18, 1957. Both these actions were confirmed on November 12, 1957, by the Investment and Insurance Company Committee of the corporation by written resolution.[8] On February 25, 1958, the President of University wrote its attorney in this matter, "the University has directed you, as its attorney, to interpose the eleemosynary defense * * *. This is our considered opinion and decision, and you are respectfully requested to proceed in accordance therewith."[9] At a regular meeting of the Executive Board of University on March 14, 1958, at which a quorum was present, it was resolved that the action of the President, in agreeing "that the use of the charitable defense in the Wenrich case is absolutely unconditional," be approved.[10] On this record, it is clear that

7. The undersigned listed this case for supplemental argument on 5/15/58, at which time he stated to counsel in open court that he suggested the record be supplemented by the provisions of any lease between University and Dr. Pendergrass and by the terms and circumstances under which Dr. Pendergrass operates the radiology department. See pages 2, 3 and 8 of Partial Transcript (Document No. 44 in Clerk's file). Plaintiff stated in his memorandum filed 5/29/58: "Plaintiffs are willing to stand on the present state of the record on the question of the landlord-tenant relationship between defendant trustees and defendant Dr. Pendergrass." The record has not been supplemented.

8. The text of the resolutions are set out in Exhibit A, Brief of Plaintiff in Support of Its Motions on the Pleadings. Plaintiff's and defendant's briefs are being attached to this opinion and placed in the Clerk's file.

9. See letter attached to affidavit of April 29, 1958 (Document No. 41 in Clerk's file).

10. See affidavit referred to in footnote 9 and resolution attached to that affidavit. Although the plaintiff has filed an affidavit of March 5, 1958 (Document No. 43 in Clerk's file), saying "Plain-

tiff's attorneys were informed that there were no meetings held by said Board of Trustees," this affidavit preceded the March 14 meeting of the Executive Board and this portion of the affidavit is too vague to conform to the requirements of F.R.Civ.P. 56(e), 28 U.S.C., since it does not state the identity of the informants and whether they were connected with University. Also, this statement in the affidavit is contrary to paragraph 8 (page 3) of the "Statutes at Large" (attached as Exhibit D to the same affidavit), which provides for at least three meetings of the 42 trustees (paragraph 3, page 1) each year. Section 3 of the Act of September 30, 1791, authorizes the trustees to make "rules and statutes." Article IV of these Statutes at Large (pages 9 and 10) provides for the Executive Board of not more than 20 trustees, which meets at least once a month except during July and August. Paragraph 2 of Article IV contains this language:

"Unless otherwise determined by the Trustees, the Executive Board shall have full power to take all action which the Corporation or the Trustees are authorized to take, including, but not limited to the purchase and sale of bonds, stocks, mortgages, and real estate, and the supervision of finances, property, buildings, and grounds; * * *."

defendant University may raise the charitable defense recognized in the Knecht case, supra.

### Order

And now, July 25, 1958, it is ordered that (1) plaintiff's petition to strike defendant's (Trustees of the University of Pennsylvania) motion for judgment on the pleadings (Document No. 33 in Clerk's file) is denied, (2) the above-mentioned defendant's motion for judgment on the pleadings (Document No. 8 in Clerk's file) is granted, and (3) this action insofar as it is against defendant, Trustees of the University of Pennsylvania is dismissed with prejudice.

Amendments to these Statutes at Large can only be made by the Board of Trustees, so that the Executive Board was authorized to act in this matter within

the terms of 15 P.S. § 2851–502(g). 15 P.S. § 2852–402(6), relied on by plaintiff (see plaintiff's brief filed 5/29/58), applies to business corporations.