Frederick P. WERTHEIMER, Administrator of the Estate of Vincent Kozak, Deceased, a/k/a Vincenty Kozak

v.

Herbert B. FRANK and Metropolitan Hospital, Inc.

Civ. A. No. 29630.

United States District Court
E. D. Pennsylvania.
May 28, 1962.

Robert H. Arronson, Philadelphia, Pa., for plaintiff.

White & Williams, Philadelphia, Pa., for defendant Metropolitan Hospital.

VAN DUSEN, District Judge.

This action has been brought by the administrator of the Estate of Vincent Kozak, who died on July 18, 1960, at Metropolitan Hospital while a patient under the care of defendant Frank. The Complaint alleges that the death was caused by the joint and several negligence of the defendants and demands damages therefrom. The jurisdiction of the court is based on diversity of citizenship.

The matter is presently before the court on the Motion of Metropolitan Hospital, Inc. (hereinafter called "Metropolitan") for Summary Judgment on the ground that it is an eleemosynary institution, was engaged solely in charitable operations at the time of the occurrence in suit, and is, therefore, immune under the applicable Pennsylvania law from liability alleged in this suit.

Plaintiff does not dispute the fact that under Pennsylvania law a public charitable institution is not liable for the torts of its servants, employees and agents.[1] Plaintiff contends that defendant corporation is not a public charitable institution,[2] but admits that, if this record contained relevant, undisputed facts surrounding the activities of defendant corporation and the only issue remaining was whether or not it was a charity entitled to the immunity doctrine, the court could determine as a matter of law whether or not the immunity existed. See Fortugno v. Trachtenberg, 202 F. Supp. 177 (E.D.Pa.1962).[3] It is plaintiff's contention that the record shows disputes as to material facts relating to defendant hospital's activities and that, therefore, the court cannot determine, as a matter of law, the status of the defendant corporation as to its immunity under the applicable law.

The record shows that the undisputed facts include the following:

1. Metropolitan was organized as a non-profit corporation.

2. Under § 3 of the Articles of Incorporation, the purpose of the incorporation was to acquire property of a corporation which was about to dissolve

1. The Supreme Court of Pennsylvania has upheld this immunity in many cases, the latest expression of the law being found in Michael v. Hahnemann Medical College & Hospital, 404 Pa. 424, 172 A.2d 769 (1961).

2. The Complaint alleges that the defendant was at all material times "engaged in the business of operating a hospital." Metropolitan alleges that it is an eleemosynary institution and was engaged solely in charitable operations at the time of the occurrence in suit. This al-

legation is consistently denied by plaintiff.

3. But see Woods School Tax Exemption Case, 406 Pa. 579, 178 A.2d 600 (1962), where the Pennsylvania Supreme Court held that the issue of whether or not an institution is a purely public charity and founded and maintained to a sufficient degree by public or private charity to entitle it to tax exemption is a mixed question of law and fact. The Woods School Case was decided after the Fortugno case

and with the same "maintain, manage and operate * * * a non-sectarian Osteopathic Hospital, for the furnishing of medical and surgical attendance to sick, afflicted, infirm and injured persons; and to generally do everything necessary, expedient or incidental to the operation of an Osteopathic Hospital, in all of its phases but not numbered. The said proposed corporation does not contemplate pecuniary gain or profit, incidental or otherwise, to any of its members."

3. The corporation has no stockholders.

4. The trustees of the corporation are not paid salaries for services in that capacity.

5. The corporation pays out no amounts called "dividends."

6. The corporation made a profit during the period from July 31, 1961, to October 31, 1961. The net operating profit for that period was $21,616.52 and for the month of October 1961 the net operating profit was $16,414.07 (see p. 4 of Exhibit 4 to Document No. 11).

7. The corporation apparently pays out of its surplus amounts for "Doctors' 'A' Bond Interest."

8. The Capital and Surplus of the corporation as of October 31, 1961, was $1,808,180.47.

9. The financial statement includes as a long term debt:

"Bonds Payable
 (5% Debenture) $549,400.00
"Bonds Payable
 (6% Series B) 149,500.00"

In order to determine what qualifies as a charity in any particular factual situation, recourse must be made to state law.[4] The term "charity" is difficult to define precisely[5] and, although the term "public charity" has been defined in Pennsylvania case law,[6] the def-

inition cannot be applied without looking at the facts in each particular case.

Under Pennsylvania law, the mere fact that defendant is a non-profit corporation does not of itself make it a public charitable corporation entitled to the charitable immunity doctrine.[7] Neither is the charter of a corporation standing alone regarded as sufficient to show satisfactorily the character thereof.[8] In Fire Insurance Patrol v. Boyd, 120 Pa. 624, at page 646, 15 A. 553, 556, 1 L.R.A. 417 (1888), the court said:

"The true test of a legal public charity is the object sought to be attained; the purpose to which the money is to be applied; not the motive of the donor."

In Betts v. Young Men's Christian Ass'n of Erie, 83 Pa.Super. 545 (1924), the court said at pp. 550–553:

"It has been held in a number of cases that an association formed for general and public usefulness, free from the taint of private gain to the associators, constitutes a public charity: * * * (citing cases). 'A gift to be applied consistently with existing laws for the benefit of an indefinite number of persons, either by bringing their minds and hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government.' * * * The moment the word is used in connection with the present subject-matter of charitable gifts or charitable institutions the popular as well as legal mind takes in at once its wider scope of goodwill, benevolence, desire to add to the happiness or improvement of our fellow-beings.

4. Cf. Note, 19 U. of Pitts.L.Rev. 119, 120 (July 1957).

5. See 7 P.L.E. "Charities" ⬤1, p. 41.

6. Id. at pp. 41–42.

7. Allison v. Mennonite Publications Board, 123 F.Supp. 23, 27–8 (W.D.Pa.1954).

8. Boyd v. Insurance Patrol of Philadelphia, 113 Pa. 269, 280, 6 A. 536 (1886)

* * * In Gable v. Sisters of St. Francis [75 A. 1087], supra, it was held that the character of the defendant as a purely charitable institution was not affected by the fact that a portion of the hospital maintained by it was devoted to pay patients who paid in full for the nursing and attention received by them. The same ruling was made in Massachusetts in McDonald v. Mass. General Hospital, 120 Mass. 432, where the corporation by its rules required of its patients payment for their board, according to their circumstances and the accommodations they received; and in Gooch v. Assn. for Relief of Aged and Indigent Females, 109 Mass. 558, where it was held that a corporation established for the support of poor and old women which devoted all its funds to the support of such women in its home, and was no source of profit to its members, was a charitable corporation although it required a payment of money as a requisite for admitting a woman into its home. * * * ' * * * There is no element of gain in the object and operations of this association. It is a public charity' (p. 579). In Daly's Est., 208 Pa. 58 [57 A. 180], a bequest of a fund 'to furnish homes, shelter, protection and instruction and improvement to industrious girls and women, while either in or out of employment, at the least possible cost to them commensurate with maintaining the proper sense of self-respect on the part of the beneficiary' was held to create a public charity. See also Donohugh's App., supra [86 Pa.] p. 313, and Price v. Maxwell, supra [28 Pa.] p. 34. It is becoming more and more

the aim of charity societies to teach persons how to become self-supporting rather than merely to dole out alms, and the charitable character of the organization is not lost by such change of method.

"* * * The public character of a charitable institution, to be within the rule above mentioned, is determined by the generality of its objects and operations, not by its control by the public."

It has been recently stated that the test appears to be whether or not a corporation is operating as a commercial business. If it is engaged in business and acting in much the same way as profit corporations operate, then its activities cannot be considered charitable.[9] Although there are no Pennsylvania Supreme or Superior Court decisions which deal with the liability of a private hospital run for profit, it appears clear that such an enterprise would be liable for the negligence of its servants.[10]

■ In this case, such pertinent facts as the following have not been established or are not undisputed:

(a) The extent to which there is any element of gain to any person in the operations or object of the defendant corporation. Cf. language quoted from the Betts case above.

(b) The extent to which surplus funds of defendant corporation result from its operation as a profit-making institution. Cf. Allison v. Mennonite Publications Board, 123 F.Supp. 23 (W.D.Pa.1954).

(c) The value of treatment, if any, of indigent persons. (Whether or not any charity patients are admitted may be of importance. The cases concerning hospitals and charitable immunity always discuss the number of free patients. E.

9. Allison v. Mennonite Publications Board, 123 F.Supp. 23, 27–8 (W.D.Pa.1954).

10. In Brown v. Moore, 247 F.2d 711, 718 (3rd Cir. 1957), cert. den. 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112 (1957), the court stated that the principle of Gable v. Sisters of St. Francis, 227 Pa. 254, 75 A. 1087 (1910), which upheld chari-

table immunity, was not applicable, since the sanitarium was conducted for profit, citing the language in the dissent of Judge Allen M. Stearne in McConnell v. Williams, 361 Pa. 355, 356, 367–8, 370, 65 A.2d 243 (1949). See, also, Episcopal Academy v. Philadelphia, 150 Pa. 565, 575, 25 A. 55 (1892).

g., Gable, v. Sisters of St. Francis, 227 Pa. 254, 75 A. 1087 (1910).[11])

(d) The value of contributions and gifts compelled by charitable, benevolent and philanthropic motives. (Plaintiff contends that contributions were negligible. From July to October 1961, only $775.25 was contributed, in October 1961, only $34.50, and as of October 31, 1961, the hospital "donation account" was only $554.15. See language of Judge Stearne in dissent, McConnell v. Williams, 361 Pa. 355, 356, 370, 65 A.2d 243 (1949).)

(e) The original source of the hospital's funds. (Emphasis is placed on this item by Pennsylvania courts in determining if an institution is a public charity and entitled to the real estate tax exemption. E. g., Ogontz School Tax Exemption Case, 361 Pa. 284, 65 A.2d 150 (1949).)

(f) The manner in which defendant corporation decreased its mortgage obligation by $320,000. in 16 years. (The ability of an institution to liquidate a large part of its debt in 15 years was considered important in determining that it was not a public charity in the Ogontz School case.)

(g) Whether or not defendant is, in fact, engaged in a commercial enterprise. (A charitable institution conducting a business enterprise not directly related to the purpose for which the charity was organized is liable for torts committed in the operation of the enterprise. 7 P.L.E. "Charities" ☞36, p. 117.[12])

(h) The contractual relationship, if any, between the defendant corporation and the staff members, past and present, regarding financial matters.[13]

(i) The origin and terms of the long-term debt represented by 5% Debenture and 6% Series B Bonds.[13]

(j) The source of funds for the purchase of the buildings bought after the hospital was incorporated and the use to which they are now being put.[13]

The court does not accept the argument of defendant corporation that, even if plaintiff's contentions are true, it is immune from liability merely because it operates and exists to treat the sick from among the general public and because it is not operated for the private gain of the associators.[14] Plaintiff's admission that the corporation holds its assets and property for the purpose for which defendant corporation was incorporated and is bound to use and apply all of its funds for the furtherance of charitable and benevolent purposes is qualified by this language: " * * * and it is averred that the funds are not used for charitable and benevolent purposes." [15]

The Motion of defendant corporation may not be granted at this time because of the failure of defendant to sustain its burden of proving that it is an eleemos-

11. Whether or not the hospital expends funds on indigents is disputed. Compare Documents Nos. 11 and 14 with Documents Nos. 12 and 17. It is also noted that the detailed account submitted by the hospital does not include an "emergency room" or "obstetrics clinic" and that the alleged free treatment is in no way reflected in the account.

12. Although it does not appear that this principle is applicable here, it might be found that the entire operation was a "commercial enterprise."

13. These facts might shed light on the issue of whether or not there was a "gift" of the original funds or whether the staff members are receiving dividends in the guise of bond interest. The contractual relations regarding the billing by the hospital and the corporation's keep-

ing of 25% of the doctors' fees might also be significant.

14. See page 4 of Defendant's Supplemental Brief in support of this Motion.

15. See Answer No. 7 to Requests for Admission (Document No. 16). It is arguable that this, in fact, admits the charitable status of the institution. Since in Pennsylvania the mere fact that a charitable trust has been mismanaged by the trustee does not entitle the heirs to termination of the trust, the party alleging that a charitable corporation has abandoned its charitable purpose does not have a light burden, since to sustain it would, in effect, work a forfeiture and the courts will not find such a forfeiture in a doubtful case. See 7 P.L.E. Charities ☞13 and 29, and cases therein cited.

ynary institution.[16] If the parties do not supplement the record within 60 days by stipulation or otherwise, a pre-trial conference will be scheduled for consideration of a preliminary trial of this issue.

## ORDER

And Now, May 28, 1962, It Is Ordered that the Motion of Defendant Metropolitan Hospital, Inc. for Summary Judgment (Document No. 11) is Denied, without prejudice to its renewal if the record is appropriate.

16. The court does not wish to indicate that all the facts stated above as not being established or as being disputed must be established in every case in which a motion for summary judgment is made on the ground of charitable immunity. They are mentioned here as being illustrative of the deficiencies, from the point of view of considering a motion for summary judgment, on the record now before the court.