First Baptist Church of Pittsburgh, Appellant, *v.* Pittsburgh et al.

Argued March 25, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Mahlon E. Lewis,* with him *Harold R. Schmidt* and *Stewart & Lewis,* for appellants.

*N. R. Criss,* School Solicitor, with him *William Alvah Stewart,* City Solicitor, and *John R. Bentley* and *Harry Savage,* Assistant City Solicitors, for appellees.

OPINION BY MR. JUSTICE PARKER, May 12, 1941:

These appeals arise out of a claim by the First Baptist Church of Pittsburgh that a plot of ground assessed

to it for school and city taxes is exempt from taxation. The church appealed from a final assessment by the board of assessors to a court of common pleas and at the same time filed a bill in equity alleging that the property as a whole was exempt from taxation and praying that the municipal authorities be restrained from levying taxes against it for the years 1936, 1937, and 1938. Practically the same facts being involved in the two cases, they were consolidated for the purposes of trial. The court, after hearing, decided the cases adversely to the church, filing separate opinions in each case. The church has appealed from those decisions to this court.

(1) The court below held that the appeal from the board of assessors was not taken within the time prescribed by statute and that it should therefore be dismissed. Assessments for taxes and appeals therefrom in cities of the second class, such as Pittsburgh, are regulated by article VI of the Act of March 7, 1901, P. L. 20, as amended (53 PS §8771, et seq.), and by the Act of July 9, 1897, P. L. 219 (53 PS §§9971-2-3, 9991), reserved from repeal by the Act of 1901.* The Act of 1901 provides for a triennial assessment and gives any property owner on appeal from any valuation the right to be heard by the full board. Section 2 of the Act of 1897, giving the owner a right of appeal from the board of assessors to the court of common pleas, provides: "When such assessors shall have finally acted upon such assessments and appeals, an appeal may be taken therefrom to any court of common pleas of the county in which such city is located, *whose decision shall be final thereon.* Such appeals shall be

---

* The Act of May 22, 1933, P. L. 853, deals with subjects, property, and persons subject to and exempt from taxation for all local purposes, but its provisions concerning assessment and valuation are limited to taxation for county purposes and for use of municipalities which levy their taxes on county assessments.

taken to such court within thirty days after final action by the assessors as aforesaid." (Italics supplied.)

We are of the opinion that the court below correctly held that the church did not take its appeal from the board of assessors to the court of common pleas in time. Triennial assessments were made for city and school purposes in Pittsburgh in the fall of 1933 for the years 1934, 1935, and 1936, and in the fall of 1936 for the years 1937, 1938, and 1939. There were various conversations and communications between the church and the board of assessors, many of them informal in character, between June 28, 1935, and November 19, 1938. The subject of discussion was rather a general right to an exemption than a complaint as to any particular assessment. However, the board took specific action on two occasions, after the 1933 assessment and after the 1936 assessment, declining to grant any exemption to the church on the lot in question.

The church, on December 16, 1938, presented a petition to the court of common pleas in which it stated that it was taking an appeal from tax assessments made against land particularly described therein and purchased by it in 1919, and prayed that that land be "declared to be exempt from taxation." The petition failed to give any indication that the church was appealing from any particular assessment and such information was not supplied to the court in any other form. The court granted the appeal on the next day and framed an issue. When the cause was tried it seemed to be the theory of the church that it could appeal generally from any and all tax assessments and thereby raise the broad question as to whether this land was exempt. This theory loses sight of the provisions in the statute for appeals which furnish a method of contesting particular assessments. When the issue was presented to the court, the trial judge considered the appeal as if it was from the triennial assessment made in 1936

for the years 1937, 1938, and 1939, and dismissed the appeal for the reason heretofore stated. Consideration of the 1933 assessment was eliminated because the board rendered a definite decision on January 17, 1936, refusing the claim of the church and gave notice thereof to the church on February 15, 1936, many months before the appeal was taken.

After the 1936 assessment was made, the church renewed its application to the board for relief and the board, on November 30, 1937, again took formal action and refused the claim for exemption, so notifying the church on December 1, 1937. This was more than a year before the present appeal was taken. After that action by the board, further correspondence and conversations were had between members of the board and counsel for the church. This did not extend the time for taking an appeal: cf. *Frazier's Assigned Estate,* 188 Pa. 415, 41 A. 528; *Rumsey's Case,* 135 Pa. Superior Ct. 515, 7 A. 2d 43.

On November 19, 1938, the board again took the matter under consideration and refused to reconsider its former decision. This refusal of reconsideration was not reviewable: cf. *McCready v. Gans,* 242 Pa. 364, 371, 89 A. 459, and cases there cited holding that a refusal of reargument in a common law proceeding is not reviewable upon appeal. The board having previously made a definite decision and having given no indication that it was suspending its decision, the original action was final and the subsequent proceedings did not stop the running of the statutory period allowed for appeal: cf. *Chester School District v. Richardson & Luce,* 320 Pa. 438, 182 A. 500; *Frazier's Assigned Estate,* supra. An intolerable situation would be created if the right to appeal could be delayed indefinitely by loose correspondence between a person assessed and the board. It seems clear that the church lost its right of appeal by delay.

We also call attention to the decisions of this court and of the Superior Court holding that where a statute expressly denies an appeal from the order of the court below or it is provided that the action of the court below shall be final, appellate review, by way of certiorari, will be limited to the question of jurisdiction and the regularity of the proceedings: *Grime v. Dept. of Public Instruction,* 324 Pa. 371, 375, 188 A. 337; *State Board of Undertakers v. Frankenfield,* 329 Pa. 440, 198 A. 302. Also, see *McGettigan's Liquor License Case,* 131 Pa. Superior Ct. 280, 285, 200 A. 213. In the *Grime* case, Chief Justice KEPHART said (p. 378): "Even if its [the lower court's] construction of the statute had been erroneous, it is the final court of appeal in such matters."

(2) In the equity case, the court below found as a fact that the entire lot for which exemption was claimed was not "necessary for the occupancy and enjoyment of the church", remarking incidentally that while the church might have been entitled to add a portion of the land in question to the church property already exempt, there was no justification for including the entire plot at the corner of Bayard Street and Ruskin Avenue. It then concluded as a matter of law that equity would not have jurisdiction and dismissed the bill.

In 1910, the church acquired title to a lot at the corner of Bellefield Avenue and Bayard Street, Pittsburgh, with a frontage of 231.44 feet on the former and 278.35 feet on the latter. A church building was erected on this land and has been used as a regular place of stated worship and as such has been exempted from taxation. The main entrance to the church is from Bellefield Avenue. There is no obstruction as to light or ventilation on the front or on either side of the church building and the larger windows are in those locations. In 1919, the church purchased a lot extending from the rear line of the original lot along Bayard Street 150 feet

to Ruskin Avenue and extending back from Bayard Street 195.99 feet. Tennis courts were maintained on the lot until April, 1935, and taxes were assessed and paid until that time. The church then landscaped and planted two-thirds of the lot next to Bayard Street and placed cinders on the remainder of the lot, which was at a lower grade, thus providing a parking lot for the use of members attending services in the church. The parking lot had sufficient capacity to accommodate about forty automobiles, although the resident membership of the church is about 1,100. There is a space of sixteen feet between the portion of the church opposite the entrance used as a baptistry and choir loft and the line of the lot last acquired. The evidence showed conclusively that the second lot was purchased for the primary purpose of providing a location for a parish house and an addition to the portion of the church used as a Sunday school, such buildings to be erected when funds were available. There was also evidence that the officers of the church in making the purchase of the second lot took into account the fact that the erection of an apartment house on the lot would, in their opinion, have interfered with light and air for the church and would have detracted from the beauty of the church, which is a notable example of French Gothic architecture.

Equity has jurisdiction to restrain attempted taxation for total want of power. "But, where the power to tax appears, and the complaint is over-assessment, or inadequate exemption, the remedy is by an appeal to the common pleas from the action of the board of revision": *Dougherty v. Phila.*, 314 Pa. 298, 301, 171 A. 583; *Dougherty v. Phila.*, 112 Pa. Superior Ct. 570, 578, 172 A. 177. It follows that if part of the property is not exempt the bill was properly dismissed: *Laymen's Week-End R. L. of Phila. v. Butler*, 83 Pa. Superior Ct. 1, 6. We therefore confine our attention to a con-

sideration of the question whether the entire property was exempt.

Since the church could not support its claim that the entire lot was exempt by showing that a portion of the lot was used for parking purposes for the use of its members, it became necessary for the church to show that the remaining portion of the land at the corner of Ruskin Avenue and Bayard Street was reasonably necessary for the occupancy and enjoyment of the church building. The finding by the chancellor that such necessity did not exist places a heavy burden on appellant who was required to show that the finding was not supported by adequate evidence or reasonable inferences to be drawn therefrom: *Cruzan v. Cruzan,* 243 Pa. 165, 89 A. 876; *Robb v. Stone,* 296 Pa. 482, 491, 146 A. 91. We are convinced that the evidence does support the findings whether considered from a practical or an esthetic standpoint.

Article 9, §1, of the Constitution of this Commonwealth authorizes the General Assembly to exempt from taxation "actual places of religious worship", and by the Act of May 22, 1933, P. L. 853, §204 (72 PS §5020-204), it is provided that "all churches, meeting-houses, or other regular places of stated worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same" are exempted from all city and school taxes. It will be observed that a stricter line is drawn on the exemption granted to churches than that given to charitable institutions. It is only *actual* places of religious worship that may be exempted so that if this entire lot is to be relieved from taxation it must be because it is necessary for the occupancy and enjoyment of the church building.

The fact that the lot was purchased at a cost of over $50,000 for the primary purpose of erecting an addition to the church at some future time not only is not a ground for exemption *(Mullen v. Commissioners of Erie*

*County*, 85 Pa. 288), but furnishes some basis for an inference that the entire plot was not necessary for the maintenance of an actual place of religious worship. The word "necessary" does not import an absolute necessity, but its meaning cannot be broadened so as to comprehend that which is merely desirable. As used in this statute, the meaning is limited to a reasonable necessity and contemplates among other matters the inclusion of sufficient ground for entrance and exit and for light and air. It is apparent that this expensive and imposing structure was located in its present position after due consideration. We cannot assume that the trustees and the architect who were responsible for the erection of the building within fifteen feet of Bayard Street, forty-one feet six inches from Bellefield Avenue, and less than ten feet from the lot line on the southwest, did not provide such curtilage as was reasonably necessary for the occupancy and enjoyment of the building. They must also have given due attention to esthetic considerations. The lot later purchased and for which an exemption is now claimed is a large lot located at the rear of the church and at a point where there is the least need for light, air and approach. If such a lot in its entirety is exempt, little limitation will be placed on the amount of land that may be taken over by a church, thereby casting an additional burden on other taxpayers. The fact that an apartment house might at some time be erected on this lot is entitled to little consideration.

Not only did the church fail to support the burden that lay on it of showing that all this additional curtilage was required, but the evidence supports a finding to the contrary. The decree must therefore be affirmed.

The appeal at No. 55 March Term, 1941, is quashed at the cost of the appellant. At No. 54 March Term, 1941, the decree of the court below dismissing the bill is affirmed at the cost of the appellant.