### ALLISON
v.
### MENNONITE PUBLICATIONS BOARD.

Civ. No. 11645.

United States District Court, W. D. Pennsylvania.

Aug. 19, 1954.

Mahlon E. Lewis, Pittsburgh, Pa., for plaintiff.

John C. Bane, Jr., and David McNeil Olds (of Reed, Smith, Shaw & McClay), Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

It appears that on August 12, 1953, the plaintiffs, citizens of Missouri, instituted the above action against the Mennonite Publication Board, an Indiana corporation, doing business under the name of the Mennonite Publishing House, at Scottdale, Pennsylvania, in the Western District of Pennsylvania. The plaintiffs' Complaint alleged that in June, August, and October of 1952, the defendant printed, published, and distributed throughout the United States 10,500 copies of a book entitled, "Life With Life" which contained numerous libelous statements against the plaintiffs and constituted an unlawful invasion of plaintiffs' right to privacy.

This matter comes before the court on defendant's Motion for Summary Judgment, Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A.

Defendant's motion is premised upon the thesis that the complaint has failed to state a cause of action in that the Mennonite Publication Board is a charitable non-profit corporation and as such is not subject to legal liability for plaintiffs' damages.

A motion for summary judgment should not be granted if there is an issue presented as to the existence of any material fact, Sarnoff v. Ciaglia, 3 Cir., 165 F.2d 167; and in considering such a motion, the court should take the view of the evidence most favorable to the party against whom it is directed, giving to that party the benefit of all favorable inferences that may be drawn from the evidence. Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101.

Under generally recognized conflict of laws principles, the substantive law to be applied in a tort action is that of the place of wrong, the *lex loci delicti*, or in other words, the place where the defamatory statement is communicated. Restatement, Conflict of Laws, Section 377(5); Sweeney v. Philadelphia Record Co., 3 Cir., 126 F.2d 53; Kilian v. Stackpole Sons, Inc., D.C., 98 F.Supp. 500; Preveden v. Croation Fraternal Union of America, D.C., 98 F. Supp. 784.

The booklets in question were distributed in Missouri and Pennsylvania. The fact that the Mennonite Publication Board was incorporated in Indiana could in no way prove controlling as to the imposition of liability upon a charitable organization, in view of the fact that the rule of charitable immunity has been held to be a strong public policy of the Commonwealth of Pennsylvania. Bond v. City of Pittsburgh, 368 Pa. 404, 84 A.2d 328.

A foreign law or a statute of another state will not be enforced in the courts of a state where a cause of action in tort arises under the doctrine of comity, where the law of the foreign state is contrary to the public policy of the state where the cause of action arises. Gray v. Blight, 10 Cir., 112 F.2d 696; 21 C.J.S., Courts, § 545; Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481; Hughes v. Lucker, 3 Cir., 174 F.2d 285; Hartwell v. Piper Aircraft Corp., 3 Cir., 186 F.2d 29; Magee v. McNany, D.C., 10 F.R.D. 5, 12.

Accordingly, I must conclude that the law of Pennsylvania and Missouri, the

locale wherein the alleged torts were committed, must be applied to the instant proceeding.

 It is a doctrine too well established to be shaken, and as unequivocally declared in Pennsylvania as in any other state, that a public charity cannot be made liable for the tort of its servants. Fire Insurance Patrol v. Boyd, 120 Pa. 624, 15 A. 553, 1 L.R.A. 417; Gable v. Sisters of St. Francis, 227 Pa. 254, 75 A. 1087; Siidekum, Adm'r v. Animal Rescue League of Pittsburgh, 353 Pa. 408, 45 A.2d 59; Betts v. Young Men's Christian Association of Erie, 83 Pa. Super. 545; Paterlini v. Memorial Hospital Ass'n of Monongahela City, 3 Cir., 247 F. 639.

A review in detail of the Missouri law on this question would prove superfluous. Suffice it to say, that Missouri has the same public policy against liability of charitable corporations for torts as does Pennsylvania, and plaintiffs' position could in no way be strengthened by invoking the substantive law of that state. Hinman v. Berkman (United Jewish Appeal), D.C., 85 F.Supp. 2.

The crucial question for determination, in the present motion, is whether defendant is a "charity" within the meaning of the rule of charitable immunity.

The primary facts have been stipulated between the parties and amply lend themselves to resolving the issue:

1. The defendant is a non-profit corporation, incorporated March 31, 1908 under the laws of the State of Indiana and duly registered and qualified to engage in business in Pennsylvania as a foreign non-profit corporation. The original capital of the defendant, namely, $16,953.59, was contributed by members of the Mennonite Church. Under the Corporate Charter the defendant corporation is managed by a Board of Trustees constituted as follows: Each Mennonite and Amish Mennonite Conference in North America shall have the privilege to choose one member, and the General Conference shall have the privilege to choose three members. Each shall hold office for the term of two years or until their successors are duly elected and installed.

2. Article 2 of the Articles of Incorporation provides that "The object of this Association shall be to establish, own and control a church publication house for the publication and dissemination of the literature of the Mennonite churches to awaken a greater interest in good literature, advance the cause of Christ and promote unity of faith in the church."

3. The defendant owns real estate located in Scottdale, Westmoreland County, Pennsylvania, where it maintains its printing plant and publishing headquarters. It also owns bookstores in Souderton, Pennsylvania; Lancaster, Pennsylvania; Goshen, Indiana and Kitchener, Ontario. The real estate holdings of the defendant are taxed by the municipalities in which they are located.

4. The defendant corporation is exempt from Federal income taxes under Section 101(6) of the Internal Revenue Code, 26 U.S.C.A. § 101(6), and contributions made to it are deductible by the donors under Section 23 (*o*) and (q).

5. Most of the several books and publications of the defendant are sold at a price which will return something more than the costs of production and distribution to the defendant. Some of the defendant's publications, however, are sold at a loss and some are given away. Bibles and concordances and other standard religious items, such as maps of the Holy Land, printed by other publishing houses and sold by others, are distributed and sold by the defendant. These constitute a small portion of defendant's total sales.

6. The defendant publishes approximately twenty periodical publications, all of which are of a religious character. Two of these publications accept advertising of products produced by members of the Mennonite Church or which are of special interest to the homes and congregations of the members of the Mennonite Church. The defendant does

not advertise its own publications generally except that it has advertised particular publications in religious periodicals.

7. Since its incorporation the defendant has realized a net gain in that the aggregate moneys received from its operations have exceeded the aggregate costs of those operations. The net gains so realized have been used only (1) to provide for the improvement, expansion and replacement of the publishing facilities of the Board; and (2) to provide contributions to the Mennonite Church.

8. The original capital contribution grew substantially from the date of incorporation until 1941. In the period from 1941 to 1951 the defendant spent over $700,000 for capital additions, principally for additional machinery, real estate and buildings. Of this amount approximately one-half came from reserves built up by accumulations of net gains from prior operations and the other one-half was contributed by members of the church or loaned to the defendant.

9. All moneys earned by the defendant over and above the costs of operation, which are not used for plant expansion, are used in the furtherance of the purposes of the Mennonite Church.

 A charitable corporation is defined as:

"'One whose principal aim is to give of its material substance or time to benefit those who are in need of such assistance, or will be benefited by such gift or expenditure in some other way than simply by an improvement of morals or bringing them under the influence of the gospel.' This need not be and is not always its sole aim. Subordinately and incidental to its main object, it may take pay for services or merchandise. It may even have stock, though it cannot be a stock corporation for profit.

"Corporations organized for 'charitable or benevolent' purposes, within the meaning of a statute, include all corporations organized, not for private gain or profit, but for the administration of charitable trusts, such as hospitals and asylums for the sick, insane and poor, and colleges or schools for the promotion of piety or learning, and libraries. 'Charitable' and 'benevolent' are not synonymous, the latter being the broader. Such corporations do not, however, include corporations organized, not for the administration of a charity, but primarily for the gain or benefit, pecuniary or otherwise, or the furtherance of personal objects or beliefs of its members, such as the promotion of Christian Science, the earnings of which are placed exclusively within the discretion of its directors, and the residuary fund of which is used in compensating its directors for their services; or having for its primary object the dissemination of theosophical ideas, and procuring converts thereto; or 'for the purpose and object of promoting evangelical religion by means of the Bible, the printing press, colportage, Sunday Schools, and other appropriate ways,' or the promotion and enforcement of particular legislation." 1 Fletcher Cyclopedia Corporations, 270.

 Again, it is stated at page 627 of Volume 10 Fletcher Cyclopedia Corporations:

"A purpose is charitable if its accomplishment is of such social interest to the community as to justify permitting the property to be devoted to the purpose in perpetuity."

Webster's New International Dictionary, 2nd Edition, defines "charity" (in the institutional sense) as:

"An organization or institution engaged in the free assistance of the poor, incapacitated, distressed, * * *."

 The fact that the defendant may be a non-profit corporation does not necessarily mean that it is also charitable. Although it is true that all char-

itable corporations must be non-profit, it does not follow that all corporations which are non-profit must be charitable. In point of fact most of the non-profit corporations are *not* charitable. The hundreds of Blue Cross and Blue Shield corporations located throughout the country are all non-profit but not charitable; the vast networks of lodges and beneficial associations are non-profit but not charitable; many private schools and colleges throughout the country are non-profit but not charitable, and there is little doubt that our many country clubs are not charitable, although in most cases they are non-profit corporations.

■ The fact that no part of the net proceeds from the defendant's business is paid or contributed to any individual does not mean that the defendant is a charitable corporation. This serves only to show that the defendant corporation is non-profit but not necessarily charitable.

The Supreme Court of Pennsylvania in the case of Y.M.C.A. of Germantown v. City of Philadelphia, 1936, 323 Pa. 401, 187 A. 204, 209 (involving the validity of a real estate tax levied upon the dormitory portion of a Y.M.C.A. building) defines a charity:

"Under this definition the characteristics of an organized charity are: First, whatever it does for others is done free of charge, or at least so nearly free of charge as to make the charges nominal or negligible; second, that those to whom it renders help or services are those who are unable to provide themselves with what the institution provides for them, that is, they are legitimate subjects of charity. * * *".

The defendant has conducted the printing and distribution of books and literature in such a manner that it cannot be considered a charity simply to enable it to take advantage of the privileges of exemption from taxation and immunity from tort liability customarily afforded charitable corporations. The defendant, apparently from the time of its incorporation, has conducted its operations much the same as any other commercial printing business. The fact that its original capital was donated by the members of the church does not automatically make it a charity if it did make profits over and above its costs of operations, and it was in competition with other businesses which printed and distributed similar types of books and literature. When the Mennonite Publication Board did sell its books for a price, and had surplus funds left over after the costs were deducted, then it was making a profit and not acting as a charity, even in the broadest sense of the word. It makes little difference that any surplus or profit is contributed to the Mennonite Church or other charities or that it is plowed back into the Publication Board.

■ The law is unequivocally clear that the conduct of a commercial enterprise does not become charitable simply because the proceeds of the commercial enterprise are applied to charitable purposes. Y.M.C.A. of Germantown v. City of Philadelphia, supra; First Baptist Church v. City of Pittsburgh, 341 Pa. 568, 20 A.2d 209, 134 A.L.R. 1169.

The test appears to be whether or not a corporation is operating as a commercial business. If it is engaging in business and acting in much the same way as profit corporations operate, then its activities cannot be considered charitable.

As indicated by stipulation, defendant corporation sells some of its books and publications at a "price which will return something more than the costs of production and distribution to the defendant." Not only does the defendant sell its books to the public for set prices in Scottdale; it also owns book stores at Souderton, Pennsylvania; Lancaster, Pennsylvania; Goshen, Indiana, and Kitchener, Ontario. It owns a $700,000 printing plant at Scottdale which prints books and pamphlets which its stores sell. Though its publications are not generally advertised through agencies, some of them do include advertising and the Board has advertised particular pub-

lications in other religious publications. It prints, publishes, and distributes books and publications for a price and, in most years, has enjoyed an excess in revenues over costs.

Upon a most thorough and extended review of the law enunciated by the appellate courts of Pennsylvania, and viewing the admitted facts which relate to the conduct and operation of defendant corporation, I am compelled to invoke the legal precept that when a public charity invades the commercial field and engages in business, that portion of the charity's assets so employed is not subject to the charitable immunity privileges applicable to charitable enterprises. Hill School Tax Exemption Case, 370 Pa. 21, 87 A.2d 259; American Sunday School Union v. City of Philadelphia, 161 Pa. 307, 29 A. 26, 23 L.R.A. 695; Radobersky v. Imperial Volunteer Fire Department, 368 Pa. 235, 81 A.2d 865.

As such, defendant is not to be considered a charity entitling it to immunity from liability for its torts.

Defendant's Motion for Summary Judgment will be refused.

An appropriate Order is entered.