## The Church Foundation v. City of Philadelphia

*Robert L. Trescher*, for appellant.

*A. R. Sigismondi*, for respondent.

FLOOD, J., February 1, 1955.—This is an appeal from the board's denial of petitioner's application for exemption from city and school taxation of a certain landscaped plot, part of the ground upon which petitioner's church and parish house stand. In 1906 appellant acquired a rectangular part of the above premises running 120 feet on Indiana Avenue and 150 feet on Almond Street. Ten years later it acquired 32 feet additional frontage on Almond Street. In 1906 a parish house was built running southwest from Indiana Avenue on the west side of the lot, leaving a space varying between 71 feet and 80 feet to the east which was not built upon. In 1916 the church was erected on the south end of the lot adjoining the parish house so that the buildings taken together are L-shaped, leaving a small rectangular plot north of the church and east of the parish house, roughly 80 feet by 62 feet. The question is whether this plot "is necessary for the occupation and enjoyment of the church" and is therefore exempt from taxation under the provision of the Act of May 21, 1943, P. L. 571, sec. 202, 72 PS §5453.202 (*a*) (1), which provides:

"The following property shall be exempt from . . . tax, to wit

"(1) All churches, meeting-houses or other regular places of stated worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same."

The board has exempted only a narrow strip sufficient for ingress and egress to the church which lies alongside of the church building and has held the balance not to be exempt.

The real dispute is over the meaning of the word "necessary" as used in the phrase "necessary for the

occupancy and the enjoyment of the same". Of course, this cannot be construed to mean absolutely necessary because this would make the whole phrase nugatory. It is hard to imagine any church which could not be entered directly from the street unless it were one of those from the eighteenth century when Catholic churches were prohibited from facing on the main street, and a path by way of easement might be necessary to any use whatever by the parishioners. In the present day, where practically every church fronts on a street, no additional ground is absolutely necessary. Consequently our cases have held that the word "necessary" does not import an absolute necessity: First Baptist Church of Pittsburgh v. Pittsburgh et al., 341 Pa. 568, 576 (1941). On the other hand, as the same opinion states, the meaning of the word cannot be broadened to comprehend that which is merely desirable. In 61 C. J. §568, Taxation, the text lays down the principle that no more land should be exempt "than is reasonably appropriate to the purpose and is used for no other purposes". The following phrases have been used by our courts in interpreting the word "necessary" in this connection: "reasonably necessary" or "convenient and useful": County of Lancaster v. Y. W. C. A. of Lancaster, 92 Pa. Superior Ct. 514, 518 (1927) ; "not an absolute but a reasonable necessity": First Presbyterian Church Appeal, 20 Berks L. J. 242, 245 (1928).

The question as we see it then is whether the plot of ground in question is reasonably necessary for the proper enjoyment of the church and the accomplishment of its purposes. We have considerable evidence in this case that makes us conclude that the application of the above test should result in the exemption of the property here concerned. The vicar of the church testified:

"The Episcopal Church is a sacramental church and we believe that all things, material things, express the nature of God, and the church buildings and the surrounding property do for those who would worship. And even inside the church, the appointments of the church express the nature of God, both things that have been constructed by man and also things that are in their natural state, such as trees and grass."

And in further discussing the need for this small landscaped lot he said:

". . . you approach the church and are prepared to worship. It is not as though you come suddenly upon it. The green grass, and the trees, and the structure of the church, the Gothic structure, prepare an atmosphere for worship of those approaching."

Mr. Harold Wagoner, who qualified as a church architect of very broad experience, testified as follows:

"Continually expressed, in every meeting, is the belief on the part of the religious leaders that worship is a total experience. This is a phrase which I have heard over and over again. That means that from the time of the approach to the church and through the services and leaving it, that every facility that the architects provide should be provided in a manner which will stimulate worship.

"The exterior of a Gothic church is a corporate part of the sum total effect, and a Gothic church cannot be successfully designed as a facade, but as a corporate whole."

It is to be noted that the church in question is Gothic in architecture.

John P. B. Sinkler, convenor and chairman of the advisory committee on architecture of the Episcopal Diocese of Pennsylvania, with nearly 50 years' experience, much of it in ecclesiastical work, concluded that this plot of ground "is part of the church" and is

an inherent part of the architectural whole intended to create a mood for a proper place of worship.

This testimony seems to us to show that the ground in question is reasonably necessary for the occupancy and enjoyment of the church. It is clear from this testimony that the ground substantially adds to the capacity of the church building itself to promote religious worship, which is the purpose of the church. Under such circumstances the exemption should be allowed.

We do not have here a question of an excessive amount of ground. We have a situation in which there is evidence that the ground is necessary for the enjoyment and occupancy of the church. There was no such evidence in the case of Wynnefield United Presbyterian Church v. City of Philadelphia et al., 348 Pa. 252 (1944). There the only evidence was that the lot was occasionally used for open air services. Obviously this is quite different from the case before us, where we have evidence of continuous usefulness of this plot of ground in connection with the purpose for which the church itself was built. In Temple Israel of Wynnefield v. City of Philadelphia et al., 42 D. & C. 638 (1941), we had the same situation. There, too, the evidence was that the adjoining plot was used for occasional worship. Our case is more nearly analogous to the case earlier decided by this court in Beth Sholom Congregation v. City of Philadelphia, C. P. No. 6, March term, 1939, no. 3445, opinion of Judge Bok, filed June 19, 1939, where the distinction between the occasional uses of an adjoining plot for purposes of worship and its constant use as an integral part of the church itself may be seen.

The appeal is sustained and it is directed that the plot in question be exempt from the city and school taxes,