Second Church of Christ Scientist of Philadelphia et al., Appellants, *v.* Philadelphia et al.

580

Argued March 19, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Henry T. Reath,* with him *Duane, Morris & Heckscher,* for appellants.

*Daniel R. Sherzer,* Assistant City Solicitor, with him *Jacob J. Siegal,* Deputy City Solicitor, and *David Berger,* City Solicitor, for appellees.

OPINION BY WOODSIDE, J., June 10, 1959:

The question here is whether a church owned lot adjacent to the church edifice and used as a parking lot exclusively for people attending religious services is exempt from the real estate tax of the City of Philadelphia and the school district of that city.

There are two appeals, No. 32 involving the Second Church of Christ Scientist of Philadelphia, and No. 33 involving the First Church of Christ Scientist of Philadelphia, but as there are no distinguishing facts, we will consider them together in one opinion.

The Board of Revision of Taxes denied the churches' applications for exemption, and upon appeal, the Court of Common Pleas No. 6 of Philadelphia affirmed the action of the board.

Article 9, section 1 of the Pennsylvania Constitution provides that "the General Assembly may, by general laws, exempt from taxation . . . actual places of religious worship".[1] This provision of the Constitu-

---

[1] The complete section provides: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity, and real and personal property owned, occupied, and used by any branch, post or camp of honorably discharged soldiers, sailors, and marines; and the General Assembly may, by general laws, set up standards and qualifications for private forest reserves, and make special provision for the taxation thereof."

tion does not exempt places of religious worship from taxation but merely permits the legislature to exempt them within the lines laid down for its guidance. *Philadelphia v. Barber,* 160 Pa. 123, 126, 28 A. 644 (1894) and *Wagner Free Institute v. Philadelphia,* 132 Pa. 612, 617, 19 A. 297 (1890).

The General Assembly may exempt from taxation only such property as comes within the phrase "actual places of religious worship," but it need not extend the exemption to all property covered by the phrase.

The General Assembly, under the authority given it in the above constitutional provision, enacted as follows: "The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit: [a] All churches, meeting-houses, or other regular places of stated worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same;" Act of May 22, 1933, P. L. 853, §204, 72 PS §5020-204.

Prior to 1873 the legislature by special acts exempted particular real estate of certain religious and charitable organizations. As many of the exempt premises were revenue producing, these special laws became a great evil. See *Northampton Co. v. Navigation Co.,* 75 Pa. 461 (1874). In 1873 the legislature repealed these special acts and passed a general law relating to the exemption of church property, somewhat more inclusive than the aforesaid provision of the Constitution adopted a few months later.

Under the constitutional provision, and the statutes enacted thereunder, it has been held that the actual use to which a place is put determines whether it is a place which can be exempt, and that actual use means exclusive use, so that no part of a place of religious worship which is income producing, even though it be

a part of the church building itself, can be exempt from tax under this provision. *Philadelphia v. Barber*, supra, 160 Pa. 123, 28 A. 644 (1894).

During the Constitutional Convention there was an effort made to amend the committee report on section 1, article 9 of the proposed Constitution so that the section would specifically include among exemptible property "parsonages owned by any church or religious society with the lands attached not exceeding 5 acres." This amendment was rejected by the delegates. The courts have since held that parsonages and janitors' homes are residential places and are not exempt as actual places of worship. *Philadelphia v. St. Elizabeth's Church*, 45 Pa. Superior Ct. 363 (1911); *Pittsburg v. The Third Presbyterian Church*, 10 Pa. Superior Ct. 302 (1899); *Wynnefield Presbyterian Church v. Philadelphia*, 348 Pa. 252, 35 A. 2d 276 (1944).

Vacant lots held for the avowed purpose of building a church have been held to be taxable. *Pittsburg v. Presbyterian Church*, 20 Pa. Superior Ct. 362 (1902); *Mullen v. Commissioners of Erie County*, 85 Pa. 288 (1877). This is true even though, during part of the year, the lot had a tent erected on it which was occasionally used for worship. *Philadelphia v. Overbrook Park Congregation*, 171 Pa. Superior Ct. 581, 91 A. 2d 310 (1952).

Church buildings in the process of construction are taxable if no religious services are held in them, and buildings when no longer used as a place of worship immediately lose their tax exempt status. *Mullen v. Commissioners of Erie County*, supra, 85 Pa. 288 (1877); *Moore v. Taylor*, 147 Pa. 481, 483, 23 A. 768 (1892).

But "actual places of religious worship" does not relate solely to the sanctuary in which the actual worship takes place. As stated by the late President Judge

KELLER of this Court: "The law contemplates no such over-literal construction." *Chevra A.C.A.C. v. Philadelphia,* 116 Pa. Superior Ct. 101, 108, 176 A. 779 (1935). In the *Chevra* case an entire structure was held exempt as a synagogue even though only the first two floors were used for stated religious worship, and the third floor was used only for the storage of effects belonging to the congregation. The Court there pointed out that the heating plant, and a room set apart to keep the vestments of the clergy and choristers, or to store music, books, Bibles, and chairs are included as actual places of religious worship when connected with the church.

In the course of the Constitutional Convention debates, one of the delegates suggested that "buildings for Sunday-school purposes, and lecturing purposes during the week" are not exempt under the provision of the Constitution. See Vol. 6 page 95 Debates of the Convention to Amend the Constitution of Pennsylvania (1873). This being the statement of one delegate during a debate, it does not necessarily represent the thinking of the convention as does the vote on the amendment to make parsonages and 5 acres of adjacent land exemptible.

The Supreme Court made reference to this debate in *Mullen v. Commissioners of Erie County,* supra, 85 Pa. 288, 291 (1877). No such strict construction, however, has been followed, and not only Sunday School rooms,[2] but numerous other rooms and structures, including robing rooms, kitchens, dining rooms, nurseries, libraries, offices and similar parts of church buildings, as well as the sanctuary itself, have been universally exempt from taxation. What is believed to be "neces-

---

[2] See reference to a Sunday School room in *Wynnefield Presbyterian Church v. Philadelphia,* supra, 348 Pa. 252, 255, 35 A. 2d 276 (1944).

sary for the occupancy and enjoyment of places of stated worship" changes, as do the religious services, the structure of buildings, the customs of the people and the means of transportation.[3]

Our appellate courts have never passed upon the exact question now before us, but there are two cases in which there is obiter dicta indicating that parking lots are included within the constitutional phrase "actual places of religious worship," and the statutory phrase "the ground thereto annexed necessary for the occupancy and enjoyment of the same."

In *First Baptist Church of Pittsburgh v. Pittsburgh,* 341 Pa. 568, 20 A. 2d 209 (1941) the question was whether a lot, two-thirds landscaped and the remainder used as a parking lot for the use of members attending services in the church, was exempt from taxation. The Supreme Court held that it was not exempt because the primary purpose of the lot was to provide a location for a parish house and a future addition to the church, and to prevent the erection of an apartment house which might have interfered with the light and air of the present church building, a purpose which the chancellor found was not necessary for the occupancy and enjoyment of the church. In passing upon this question, the Court said, "Since the church could not support its claim that the entire lot was exempt by showing that a portion of the lot was used for parking purposes for the use of its members, it became necessary for the church to show that the remaining portion of the land . . . was reasonably necessary for the occupancy and enjoyment of the church building. The finding by the chancellor that such necessity did not exist places a heavy burden on appellant who was required to show

---

[3] For reference to the "steadily broadening" definition of "charity" see *West Indies Mission Appeal,* 387 Pa. 534, 539, 128 A. 2d 773 (1957).

that the finding was not supported by adequate evidence or reasonable inferences to be drawn therefrom (citing)". page 575. This language indicates that the Supreme Court would have held the lot to be exempt from taxation had it all been used for parking purposes.

The Superior Court suggested in *Pittsburg v. The Third Presbyterian Church,* supra, 10 Pa. Superior Ct. 302, 305 (1899) that "ground for entrance and exit for securing air and light, for the purposes of architectural and natural adornment, *for the erection of horse sheds* and, in the country, for shade and, among those who prolong their religious services during a large part of the day, places for refreshment, such as springs of water, etc., all may be included as necessary for the occupancy and enjoyment of church or meeting-house in the ordinary sense of the term." (emphasis ours) Horse sheds were not involved in the case, but it is apparent that this Court believed them to be exempt from taxation. If the church sheds for horses were exempt in 1899, the church parking lots for automobiles would be exempt in 1959.

The evidence shows that the edifice of the Second Church of Christ Scientist faces Green Street, Philadelphia, on a lot with a frontage of 139½ feet and a depth of 300 feet, which the appellees admit is not taxable. The parking lot in question adjoins the above lot and has a frontage on Green Street of 171 feet and extends along the exempt lot and Schoolhouse Lane for a depth of 150 feet.

The edifice of the First Church of Christ Scientist is on a lot with a frontage on Walnut Street of 125 feet and a depth of 215 feet, which appellees admit is not taxable. The parking lot in question there adjoins the above lot with a frontage on Walnut Street of 100 feet and a depth along the side of it for 84 feet. These lots are used exclusively for parking by members and

other people attending church functions. No income is realized from them. The evidence further establishes that there were insufficient parking places on the streets in the areas; that traffic hazards were created by unloading passengers in front of the churches, and that at times it was necessary for the city to place policemen in front of the churches to direct the traffic which accumulated at the opening and closing of services.

The Second Church has a seating capacity of 996 and an average congregation exceeding 500. Over 55% of those attending services live more than two miles from the church. Some of them are forced to park as far as five or six blocks from the church. The First Church has a seating capacity of 1300 and an average congregation of over 300. Over 40% of those attending services live more than three miles from the church.

Are the parking lots "necessary for the occupancy and enjoyment" of these places of stated worship? We think they are.

"Necessary" does not impart an *absolute* necessity, but rather a *reasonable* necessity, convenient and useful to the purpose. *County of Lancaster v. Y.W.C.A. of Lancaster,* 92 Pa. Superior Ct. 514, 518 (1928); *First Baptist Church of Pittsburgh v. Pittsburgh,* supra, 341 Pa. 568, 576, 20 A. 2d 209 (1941).

Chief Justice MARSHALL in *McCulloch v. Maryland,* 17 U. S. 316, 413 (1819), wrote as follows concerning the meaning of the word "necessary": "Does it always import an absolute physical necessity, so strong that one thing, to which another may be termed necessary, cannot exist without that other? We think it does not. If reference be had to its use, in the common affairs of the world, or in approved authors, we find that it frequently imports no more than that one thing is convenient, or useful, or essential to another. To employ the means necessary to an end, is generally under-

stood as employing any means calculated to produce the end, and not as being confined to those single means, without which the end would be entirely unattainable."

Parking lots are often necessary to the very existence of churches. Harry E. Wagoner, the president of the Church Architectural Guild of America, admitted by appellees to be an expert on church architecture, testified in this case that he had presided "over the demise of some congregations . . . without sufficient parking" and that such churches "find themselves almost in the position of a body without the proper amount of blood." He stated that he "would not recommend that a church build on a piece of property unless it had adequate parking. The mere idea of building would be abandon until a site with proper parking could be obtained."

Leslie Williams, admitted by the appellees to be an expert traffic engineer and city planner, testified as follows: "Twenty years ago in the school of city planning in the design and planning of churches and places of similar public assembly, it was considered essential to provide a suitable amount of off-street parking facilities attached to either within the building, itself, or adjacent to the structure. The same is true in the drafting of zoning ordinances . . ."

He also pointed out that ordinances of many cities require a congregation to provide for off-street parking before permitting it to erect a church edifice.

Everyone recognizes that public transportation facilities are becoming less and less available, that private automobiles for church transportation are being used more and more, and that parking space on the streets in the vicinity of churches during services are available to a very few people. Today a place to put the family automobile is as indispensable as a place

to put the overcoat and umbrella. If the church cloak-room should be exempt so should the church parking lot.

Church parking lots are. not only necessary for the welfare of the congregations, but are necessary for the welfare of the community. As suggested above, many municipalities consider a parking lot so necessary to the existence of a church that their zoning ordinances prohibit the erection of a religious edifice without adequate provision by the church for off-street parking. See *Jehovah's Witnesses Appeal*, 183 Pa. Superior Ct. 219, 130 A. 2d 240 (1957).

We are of the opinion that "actual places of religious worship," as contained in the Constitution does not contemplate such "over-literal construction" as to prevent the General Assembly from including as tax exempt property, the ground annexed to places of stated worship and necessary for the occupancy and enjoyment of the same.

Furthermore, we think that, at least under the circumstances of these cases, a parking lot of reasonable size adjacent to a church building is "necessary for the occupancy and enjoyment" of a regular place of stated worship.

The orders of the court below dismissing the appeals are reversed, and the exemptions claimed by the appellants are granted.

————

DISSENTING OPINION BY RHODES, P. J:

In my opinion the grant of tax exemption to church parking lots is contrary to the letter and spirit of article IX, §1 of the Pennsylvania Constitution, notwithstanding the advent of the automobile, the convenience to the worshipping public, and the municipal problems of parking.

Article IX, §1 of the Constitution confines the exemption to "actual places of religious worship, . . ." The Act of the General Assembly executing the constitutional provisions applies the exemption to—"(a) All churches, meeting-houses, or other regular places of stated worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same; . . ." Act of May 22, 1933, P. L. 853, §204, 72 PS §5020-204.

Tax exemption statutes are to be strictly construed; one claiming the exemption must show affirmative legislation in support of the claim, and his case must come clearly within the exemption. *West View Borough Municipal Authority Tax Case,* 175 Pa. Superior Ct. 641, 644, 645, 107 A. 2d 130. It is also fundamental that the statute must be read in conjunction with the constitutional provision; the statute cannot extend the limited exemption permitted by the Constitution. It follows that we should note it is the statute and not the constitutional provision which states that ground annexed to actual places of religious worship and necessary for the occupancy and enjoyment of the same is exempt. See *West View Borough Municipal Authority Tax Case,* supra, 175 Pa. Superior Ct. 641, 645, 107 A. 2d 130.

If we approach this case with a realization that only actual places of religious worship are constitutionally subject to exemption, it is obvious that a parking lot is taxable. The strictness with which the constitutional exemption has been applied in the past has properly resulted in holdings to the effect that a parsonage is taxable (*Philadelphia v. St. Elizabeth's Church,* 45 Pa. Superior Ct. 363, 369), a janitor's residence upon the church property is taxable (*City of Pittsburg v. The Third Presbyterian Church,* 10 Pa. Superior Ct. 302, 305), a lot upon which a parish house and future addi-

tion to the church would be built is taxable (*First Baptist Church of Pittsburgh v. Pittsburgh,* 341 Pa. 568, 576, 20 A. 2d 209), and a vacant lot held for the sole purpose of building a church, even where such lot was occasionally used for worship (*Philadelphia v. Overbrook Park Congregation,* 171 Pa. Superior Ct. 581, 586, 91 A. 2d 310) is taxable. Consequently, I find no justification to hold that a parking lot is exempt.

The majority opinion points to the convenience of the automobile to the family, to the growing municipal parking problem, and to the testimony of church architects to the effect that the current thinking in church construction includes parking facilities. But assuming all of this, there is no compelling reason to relax the rule of strict construction of exemption statutes. Even though a parking lot is a convenience and is desirable, it does not mean that it becomes an actual place of religious worship within the constitutional provision. A parsonage may be said to be desirable, convenient, and even necessary to any church, but it does not thereby wear the cloak of exemption as an actual place of religious worship. A parking lot should not rise to a higher degree of consideration than a parsonage in this respect. Furthermore, while it may be necessary for some church members to drive to church, it does not follow that a parking lot for their convenience is a necessity, or that it is exempt as an "actual place of religious worship." In *City of Pittsburg v. The Third Presbyterian Church,* supra, 10 Pa. Superior Ct. 302, 305, this Court made such a distinction, and said: "A janitor may also be a necessity but it does not follow that a residence for his comfort and convenience is such."

The policy set forth in the Constitution to exempt actual places of religious worship is a worthy and commendable one; but there is another policy of similar

stature which prohibits exemption from tax liability unless clearly entitled thereto. Public policy, as expressed in our Constitution, strongly favors nondiscriminatory taxation with very few clearly indicated exceptions; public policy therefore imposes a strict construction upon exemption statutes. A contrary liberalized construction of exemption provisions simply casts an added and discriminatory burden upon the general taxpayers; it should not be condoned. *First Baptist Church of Pittsburgh v. Pittsburgh*, supra, 341 Pa. 568, 576, 20 A. 2d 209.

Certain practical considerations must be recognized in addition to the legal aspects of the problem. There is no acceptable standard by which the size of the parking lot to be exempt can be determined. For example, should a parking lot be exempt which will accommodate the car of every member of the church, or should those members within "reasonable" walking distance be excluded? These and many other questions will undoubtedly be raised in future cases as the result of the majority opinion. Moreover, church parking lots are used only a few hours each week. Certainly it is not fair to the taxpaying public to exempt such extensive plots as are certain to be claimed for parking lots when the real utility and the convenience are so small. Such lots offer no outstanding contribution to the solution of municipal parking problems as to warrant tax exemption as a matter of general public policy. In fact, the overriding consideration is the public policy which forbids the gratuitous enlargement of the tax exempt roles in the absence of a clear statutory grant of exemption, together with the presence of a clear constitutional permission to exempt.

I would affirm the orders of the court below.

WRIGHT, J., joins in this dissenting opinion.