## First Christian Church Tax Assessment

644

*Paul M. Posa*, for appellant.

*Sanford S. Finder*, for appellee.

CURRAN, J., March 22, 1967.—The First Christian Church of Washington, Pa., affiliated with the Disciples of Christ of North America, has had a church property in this city since before the year 1908. During all of this time and up until May 1, 1966, the church was located on West Wheeling Street. Presently, the congregation is one of the larger and more active ones locally, and because of its present size it has outgrown its former building. Land has been purchased in the neighboring borough of East Washington, upon which a new church is now being erected. The old building was sold to the Washington City Mission, an agency of the local United Fund Organization, and because the mission's former premises were being razed by the redevelopment authority of the city, it was necessary that the agency have immediate occupancy of any property it purchased. The old Christian Church property was a rather substantial plant, consisting of the church proper, a three-story brick ancillary building and a two-room Sunday school building, all adjoined by a parking lot. The buildings occupy three full lots extending from West Wheeling Street to West Strawberry Avenue in the rear. The church agreed to give immediate possession to the mission, realizing, no doubt, that the market for a church

property is somewhat limited. The church has now completely moved from its old home. Services are now being held in the Washington High School auditorium, rented by the congregation, but for use on Sundays only.

On the church's newly acquired land in East Washington, work is rapidly progressing toward the completion of the new church. All of the old structures on this land have been removed except the separate garage of the old mansion house and the driveway leading to it from Wilmont Avenue. This garage, a two-story building, is now being used solely as the place where all the affairs of the church, except the Sunday services, are conducted. Here are held all of its regular meetings to decide matters of policy, tradition, and devotion. Here its most important decisions are made, most surely preceded by prayers for Divine Guidance. From this building, the Reverend Robert E. Pebley ministers to his congregation — except on Sunday mornings. Matters of transcendant church policy originate here—not from the high school gymnasium or cafeteria. All of the vast store of church records and official documents are presently kept in this building.

The County of Washington, a county of the fourth class, has refused tax exemption for this small structure, together with sufficient land on which it is located and which is necessary for its use and occupancy, contending that this two-story building is not an "actual place of worship".

The Pennsylvania Constitution of 1874, article IX, sec. 1, does not exempt church property from taxation; it only permits such, providing that ". . . the General Assembly may, . . . exempt from taxation . . . actual places of religious worship". The Act of May 21, 1943, P. L. 571, sec. 202, 72 PS §5453.202 (general assessment act, applying to counties of the Fourth Class) provides that the following property, inter

alia, ". . . shall be exempt from all county, . . . road, poor, . . . and school tax, to wit:

"(1) All churches, meeting-houses, or other regular places of stated worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same".

Appellate reports abound with cases enlightening us on the meaning of these constitutional and legislative provisions, and almost at once they raise the thought that perhaps these decisions lean heavily on the legalistic, to the possible exclusion of the theistic; shunning the shelves of the seminaries in favor of the law libraries. And yet it might truly be that only from the former can we hope to understand the real import and the complete scope of the ethic we discuss. And then we are caused to wonder if we should so narrow the definition of worship—even "stated worship"— to the point where it can mean little more than the Saturday or Sunday gathering, augmented perhaps, by a regularly scheduled mid-week meeting: Mullen v. Commissioners of Erie County, 85 Pa. 288 (1877); Wood v. Moore, 1 Chester 265 (1881). We might also ponder the reason for this great concern for restriction, as exemplified in these cases. Surely the story of religion embodies greater substance than the mere weekly scheduling of public devotion. It is not likely that the theologian could support such a proscriptive view. Rather, he most certainly would consider the Saturday or Sunday devotion as the end or the result of the many hours of prayer and effort that preceded it through the other six days of the week; the minister's continuous studies, his hours of meditation, his prayers for his own guidance and vicariously for all his parishioners. The narrow view of worshipping, while appropriate perhaps for the camp meeting era of the pioneers, contains little practicality for the modern church with its variegated and mounting

problems, placing, as it does, total importance on weekly services, excluding any pertinence for the other efforts of the church and the minister.

However, our case precedents hold clearly, with few refinements, that only the church's public meeting auditorium may be exempted from taxation. Dougherty, Trustee v. Philadelphia, 314 Pa. 298 (1934), holds that ancillary prayer and meeting rooms need not be distinguished from the main hall for tax purposes.

What then happens when the church proper is sold, as in the present case, and the minister's studies, his services, and his efforts must be transferred to another property of the church, one never before included as a church building or as part of the church plant or part of the edifice itself? Our research has found no case similar to the present one. Here there is surely a need for some physical continuity to support the spiritual transition from the old to the new church property. Otherwise a hiatus — a spiritual void — could be brought about. Refusal of tax exemption for this small building could hardly result in the liquidation of the First Christian Church, and no one would seriously so argue. But something much more basic is involved here, and that is the matter of fundamental equality and fairness. The present church is not holding in abeyance any of its services or endeavors; each parishioner is now receiving just what he did before the old church was sold, no more and no less. And this group is not asking inclusion of a structure ancillary to its main building; nor is it asking that this small building be forever tax exempt. It is only asking that this structure be considered for the time being, until its main edifice is finished, as the church itself, the place from which all services actually originate, insofar as physical property is concerned; the physical body necessary to complement its body spiritual. It is asking only for continuity.

Perhaps we should look to the basic reason for any tax exemption at all for churches and charitable institutions. 84 C. J. S. 533, §281, states that the underlying reason for exemption granted to charities and religious institutions, educational, literary, and scientific societies and associations is that this exemption is given in return for the performance of functions which *benefit the public*. The article goes on to add that the rule of strict construction has everywhere been adopted in dealing with this subject, saying, in effect, that courts may not search for ambiguity in a constitutional provision or a legislative act granting such tax immunity, but instead should assume that the framers and legislators were generally familiar with the problem as they acted. This rule of strict construction has been uniformly followed by the Pennsylvania courts: Second Church of Christ Scientist of Philadelphia v. Philadelphia, 398 Pa. 65 (1959), overruling the Superior Court case of the same title in 189 Pa. Superior Ct. 579 (1959), and holding a contiguous parking lot not exempt from taxation; First Baptist Church of Pittsburgh v. Pittsburgh, 341 Pa. 568 (1941); Parmentier, Trustees' Appeal, 139 Pa. Superior Ct. 27 (1939); Philadelphia v. St. Elizabeth's Church, 45 Pa. Superior Ct. 363 (1911); City of Pittsburgh v. Third Presbyterian Church, 10 Pa. Superior Ct. 302 (1899); Dougherty, Trustee v. Philadelphia, supra. See also Mullen v. Commissioners of Erie County, supra.

In his scholarly opinion in Laymen's Weekend Retreat League of Philadelphia v. Butler, 83 Pa. Superior Ct. 1 (1924), Judge Keller reviewed the constitutional distinction between *actual places of religious worship* and *institutions of purely public charity* (the latter also being exempt from taxation by constitutional provision and legislative mandate): "While in some respects a religious purpose may be a charitable

purpose, (McLean v. Wade, 41 Pa. 266, 269), it is not necessarily so, and when considered from the standpoint of exemption from taxation the constitutional distinction must be observed". He then adds: "But wherever the dominant purpose of an institution is religious worship and the spiritual advancement of those attending its religious services or participating in such worship, it must be considered—from the standpoint of exemption from taxation,—as a religious institution proper, although incidentally to its main purpose it may dispense charity; and exemption from taxation is permitted to only such of its property as constitute *'actual places of religious worship'* ". (Italics supplied). See also Second Church of Christ Scientist of Philadelphia v. Philadelphia, supra, and Parmentier, Trustees' Appeal, supra. This we believe is an accurate statement of the present Pennsylvania law and, therefore, if the First Christian Church is to be successful, it must be able to come within the scope of the exemption for religious purposes; the public charity exemption is not available to it.

Even though Pennsylvania has always followed the strict construction rule (Wood v. Moore, supra, and the Mullen case, supra), it would seem that more and more, the later decisions are putting increased emphasis on the interpretation of the phrase "necessary for the occupancy and enjoyment of the same", found in the Act of 1943, supra. Historically, the Pennsylvania decisions have traversed the spectrum in viewing the varied questions and refinements created by this tax exemption. We might well start with the dictum of Chief Justice Agnew in the 1877 case of Mullen v. Commissioners of Erie County, supra, where, relying perhaps on the thought of a single delegate to the Constitutional Convention of 1873 (see the opinion of the learned Judge Woodside, writing for the majority of the Superior Court in Second Church of

Christ Scientist of Philadelphia, supra, later over-ruled by the Supreme Court), stated that buildings held solely for Sunday School purposes would not be exempt from taxation. This dictum never became the law of Pennsylvania (Wynnefield United Presbyterian Church v. City of Philadelphia, 348 Pa. 252 (1944)), so that the worship and training of children has never been relegated to a lesser importance than that of their elders, a thought certainly four-square with the Scriptures.

In its decision in Second Church of Christ Scientist of Philadelphia v. Philadelphia, supra, overruling the Superior Court, Mr. Justice Bok, in speaking of appellee church, said: "[The] appellees offer very meager fare from the precedents" in support of their contention, and we agree that it is patently clear that neither Wynnefield United Presbyterian Church, supra, nor Chevra Achewa Chesed Aushe Cheval v. Philadelphia, 116 Pa. Superior Ct. 101 (1935), (both cited by appellee) would in any way be appositive to Second Church of Christ Scientist of Philadelphia, since the facts are not at all similar, the former two cases being dispositive only of the exemption of an entire building as against exemption of part of it.

And so, too, in the present case we are unable to find factual precedent. However, in referring to Chevra, supra, holding as valid the tax exemption for an entire synagogue, storage basement and all, the court in Second Church of Christ Scientist of Philadelphia, said: "Exempting an entire building when it is all put to religious use and not to purposes of gain has a reasonable and necessary basis". This much, at least, may be said for the First Christian Church's present building; that none of its use is for the purpose of gain, other than in faith. The rationale of the decision in the Chevra case seems crystal clear, leaning heavily on and recognizing, as it does, the theistic core of the

problem. It is perhaps mystical to think that a religion can be propagated solely by a weekly gathering, with nothing more to crystalize a continuity—an essence—which is unquestionably needed for its survival, as it would appear.

To attempt to chart a course somewhere between the restrictive view of the Mullen case, supra, and the rather persuasive modern decisions and dicta (excepting Second Church of Christ Scientist—and what modern city planner, so called, what shopping center promoter, or even campus regent would agree that contiguous parking is not imperative?), is to chart a most formidable and perilous course. While we will still cringe at the thought, the mood of the day, with its emphasis on and demand for close proximity parking, might well redound in empty pews. Then what of the premise that religious worship benefits the public?

The First Christian Church is asking for nothing more than tax exemption for the very place that is the core thread of its whole church endeavor. It is asking that its only place of worship be exempt from taxation. The parish worships weekly, as does its minister. But, in addition, he is in constant prayer, for himself and for his entire congregation; vicariously, his devotion is theirs—his worship is transposed as theirs.

In all of the cases we have examined, the question of exemption was one that concerned the accretion of general church property or plant to the actual edifice or cathedral itself, in some manner or other. The inquiry was to determine what property or buildings, if any, in addition to the edifice itself, would be exempt from taxation. In none of the cases has the court refused to exempt that part of the church building it found to be essential for the church worship. But never have our courts been called upon to decide, we believe, this singular question as it is raised in the present case, i. e., whether or not there is an absolute

need for every existent church congregation at all times to have its own seat, its own sanctuary, its own temple. Must these parishioners look only to a high school gymnasium as the sanctum of their church's divine ritual? If not, then this small building, unimposing as it may appear, yet nevertheless acting as the focus of their belief, is their true seat of worship. And if this be so, then this building presently used by the First Christian Church should enjoy tax exemption. We do not believe our appellate court decisions have ever ruled on this point. It would be difficult to understand why a church should be deprived of its only sanctuary, its only true axis, even though a temporary one, because of circumstances such as are presented in this case. We do not see how an established church can exist in a vacuum of suspension from one week to another, having no sacristy and no repository conducive to the proper study and meditation of its minister. The First Christian Church of Washington, Pa., has such a facility in this small two-story building now standing on its newly acquired property in the Borough of East Washington. And what it has in this small building is just as important to it now as will be its new church on the new property, insofar as its creed and articles of faith are concerned.

It is the decision of the court that the only true center of religious worship—"stated worship"—of the First Christian Church of Washington, Pa., is this small two-story building now situate in the Borough of East Washington, County of Washington, Pa., assessed under Plate C., as, "20-10-30, 2 sty Br. Gar.—Apt." (sic). Therefore, under the provisions of the Act of 1943, supra, this small structure should be and is hereby declared to be exempt from taxation. An appropriate order will be drawn to implement this decision.

## ORDER

And now, March 22, 1967, it is hereby ordered that the following property of the First Christian Church of Washington, Pa., be exempted from all county, borough, road, poor and school tax: assessed under Plate C, as "20-10-30, 2 Sty Br. Gar. Apt." (sic), together with sufficient land thereto annexed necessary for the occupancy and the enjoyment of same.